Marty POWERS *v.* CITY of FAYETTEVILLE, Employer,
and Municipal League, WCT, Carrier

CA 06-685                                              248 S.W.3d 516

Court of Appeals of Arkansas
Opinion delivered January 31, 2007

*Martin & Kieklak Law Firm*, by: *Aaron L. Martin*, for appellant.

*J. Chris Bradley*, for appellees.

R OBERT J. GLADWIN, Judge. Appellant Marty Powers appeals the April 6, 2006 decision of the Arkansas Workers' Compensation Commission, which determined that his claim is barred by the statute of limitations and that he failed to prove that he sustained a compensable injury. Appellant contends that his claim is not barred by the statute of limitations and that there was not substantial evidence to support the Commission's decision. We hold that the statute of limitations does not prevent appellant's claim; however, we affirm the decision finding substantial evidence to deny appellant's claim.

Appellant began working for the Fayetteville Fire Department in 1986 and first sought medical treatment for hearing problems with ear, nose, and throat specialist Dr. Thermon Crocker in 1992. Dr. Crocker ordered audiological diagnostic testing for appellant again in 1995, 1998, and 2001. Dr. Crocker testified that appellant suffered a normal reduction in hearing loss at the testing done in 1995, and the 1998 testing did not reveal a significant change. In 2001, however, significant change to appellant's hearing was detected, and the doctor considered him a candidate for hearing aids. His hearing loss had not been severe enough to qualify him for an impairment rating until 2001. Dr. Crocker also testified that, while he considered the impact of other causation factors for the injury such as guns, power tools, and loud

music, his opinion within a reasonable degree of medical certainty was that the major cause of appellant's hearing loss, but not the only cause, resulted from exposure to occupational noise as a firefighter.

Appellant filed a claim for workers' compensation benefits on July 31, 2002. Stipulations were made by appellant and appellees at a prehearing conference before the administrative law judge (ALJ) that included an agreement that appellant had hearing loss at the impairment level of nine-point-four percent. Although the ALJ accepted this stipulation as fact in the course of rendering his opinion, it nevertheless was determined that appellant failed to prove the existence of a compensable injury because of the lack of objective findings. The ALJ found that the diagnostic testing relied upon by appellant was within the voluntary control of the patient and therefore cannot be considered an objective finding that would satisfy the statutory requirement for compensable injuries. Appellant appealed the ALJ's denial of benefits to the Commission, which affirmed and adopted the ALJ's decision.

On previous appeal, this court reversed the decision of the Commission, finding that because the ALJ and the Commission accepted the stipulation as fact, the Commission's denial of benefits based on the rejection of audiological testing to establish objectively a compensable injury was without a rational basis. This court remanded for a determination of fact concerning a causal relationship between the appellant's hearing loss and his employment, as well as a determination of all other issues raised by the parties.

Upon remand, the Commission heard the issues of appellee's statute-of-limitations defense and the compensability of appellant's injury. The Commission ruled that appellant's claim was barred by the statute of limitations and, even if it were not, appellant failed to prove that he sustained a compensable injury. From the Commission's decision comes this appeal.

When an appeal is taken from the denial of a claim by the Workers' Compensation Commission, the substantial-evidence standard of review requires that we affirm the Commission's decision if its opinion contains a substantial basis for the denial of relief. *Dalton v. Allen Eng'g Co.*, 66 Ark. App. 201, 989 S.W.2d 543 (1999). In determining the sufficiency of the evidence to support the findings of the Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings, and we affirm if those findings are supported by substantial evidence. *Winslow v. D.B. Mech.*

*Contractors,* 69 Ark. App 285, 13 S.W.3d 180 (2000). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Mays v. Alumnitec, Inc.,* 76 Ark. App. 274, 64 S.W.3d 772 (2001). There may be substantial evidence to support the Commission's decision even though the appellate court might have reached a different conclusion if it had sat as the trier of fact or heard the case de novo. *Brower Mfg. Co. v. Willis,* 252 Ark. 755, 480 S.W.2d 950 (1972).

We will not reverse the Commission's decision unless we are convinced that fair-minded persons with the same facts before them could not have reached the conclusions arrived at by the Commission. *White v. Georgia-Pacific Corp.,* 339 Ark. 474, 6 S.W.3d 98 (1999). In making our review, we recognize that it is the function of the Commission to determine the credibility of witnesses and the weight to be given their testimony. *Wal-Mart Stores, Inc. v. Stotts,* 74 Ark. App. 428, 49 S.W.3d 667 (2001). When the Commission weighs medical evidence and the evidence is conflicting, its resolution is a question of fact for the Commission. *Green Bay Packaging v. Bartlett,* 67 Ark. App. 332, 999 S.W.2d 695 (1999). Moreover, the Commission can reject or accept medical evidence and determine the probative value to assign to medical testimony. *Hamilton v. Gregory Trucking,* 90 Ark. App. 248, 205 S.W.3d 181 (2005). The appellate court reviews the decision of the Commission and not that of the ALJ. *High Capacity Prods. v. Moore,* 61 Ark. App. 1, 962 S.W.2d 831 (1998).

## I. Statute of limitations

Appellant's argument that the statute of limitations does not bar his claim is two-fold. The applicable statute of limitations is found in Ark. Code Ann. § 11-9-702, which provides in pertinent part as follows:

(a) TIME FOR FILING.

(1) A claim for compensation for disability on account of an injury, other than an occupational disease and occupational infection, shall be barred unless filed with the Workers' Compensation Commission within two (2) years from the date of the compensable injury. If during the two-year period following the filing of the claim the claimant receives no weekly benefit compensation and receives no medical treatment resulting from the alleged injury, the claim shall be barred thereafter. For purposes of this section, the

date of the compensable injury shall be defined as the date an injury is caused by an accident as set forth in § 11-9-102(4).

First, appellant argues that the statute of limitations for hearing loss does not begin to run until the injury is permanent. Under Ark. Code Ann. § 11-9-521, when the employee's scheduled injury is permanent, then he qualifies for "weekly benefits in the amount of the permanent partial disability rate attributable to the injury." Appellant claims that it logically follows that if the injury is not permanent then an employee does not qualify for these weekly benefits. Also, if the claimant does not qualify for these weekly benefits, then he has not suffered a loss of earnings, which the Arkansas Supreme Court, in *Minnesota Mining & Manufacturing v. Baker*, 337 Ark. 94, 989 S.W.2d 151 (1999), held are presumed in these weekly benefits. Therefore, appellant argues that the statute of limitations should not run until a scheduled injury is permanent and qualifies for these weekly benefits.

Appellant claims that, until now, this court has not been presented with a case that is ripe for a determination on the issue of whether a deteriorating condition tolls the statute of limitations. In other words, appellant claims that this court has not ruled on the issue of whether the statute of limitations begins to run at the discovery of the condition, or after the condition has stabilized. Appellant argues that, here, he properly raised this argument to the Commission and there are audiograms that prove his progressive hearing loss.

Appellant initially sought treatment for hearing loss in 1992. He returned in 1995, and the tests did not show a dramatic change. There were admittedly no changes in 1998, but his hearing loss progressed significantly in 2001. He emphasizes that Dr. Crocker testified that the appellant's hearing loss was progressive, and the medical records and audiograms corroborate his opinion. The Commission concluded that the appellant's condition stabilized in 1998 and that the statute of limitations should run from that date. However, appellant claims that it is clear that his condition was not stable in 1998. In fact, he claims his injury continued to progress with further deterioration in his hearing loss because of his continued exposure to occupational noise as a firefighter. We agree. Appellant's hearing loss finally stabilized in 2001 when he retired and was no longer exposed to occupational noise. Because he filed his claim in July 2002, he was within the two-year limitations period.

■ Second, appellant argues in the alternative that the statute of limitations for hearing loss does not begin until an injury is permanent and qualifies for a disability rating. An employee who sustains a scheduled injury is entitled to compensation during the healing period. Ark. Code Ann. § 11-9-521. When the scheduled injury is permanent, then the employee qualifies for "weekly benefits in the amount of the permanent partial disability rate attributable to the injury." *Id.* However, a claimant would not qualify for weekly benefits for a permanent injury if there is no permanent partial disability rate attributable to the injury. Therefore, the statute of limitations does not begin to run until a scheduled injury is permanent and a rating can be attributed to the injury.

Appellant's hearing loss was not severe enough to qualify for a rating until 2001. Based on appellant's audiogram from 1998, Dr. Crocker formulated a rating of zero percent. However, his hearing loss in 2001 entitled him to a nine-point-four percent rating. Therefore, although appellant may have been aware of his loss in 1992, he did not suffer a presumed loss in earnings until 2001, when his condition was permanent and he qualified for a disability rating.

Appellee argues that, for purposes of commencing the statute of limitations under Ark. Code Ann. § 11-9-702(a)(1), an "injury" is not to be construed as "compensable" until: (1) the injury develops or becomes apparent; and (2) the claimant suffers a loss in earnings on account of the injury, which loss is presumed in hearing-loss cases as in those of scheduled injuries. *Baker, supra.* Appellee claims that, consequently, the statute of limitations, with respect to a claim for hearing loss, begins to run when the hearing loss becomes apparent to the claimant. *Id.* Appellee claims that, in this case, appellant's hearing loss manifested nearly ten years before he filed his claim with the Commission. However, this argument belies Dr. Crocker's 1998 rating of zero percent. Again, appellant may have recognized a problem with his hearing early on, but he did not qualify for a disability rating until 2001.

Appellee contends that appellant's claims regarding the deterioration of his hearing loss have their origins in *Baker, supra.* In *Baker,* the court seemed to associate the application of the statute of limitations to the absence of continued hearing loss when it stated, "[Appellee] became aware of his hearing loss in February 1978. The statute of limitations began to run in February 1978,

and because his hearing did not continue to deteriorate, appellee's claim became time barred in February 1980, pursuant to Arkansas Code Annotated section 11-9-702(a)(1) (1987)." *Id.* at 104, 989 S.W.2d at 157. Subsequently, in *Pina v. Wal-Mart Stores, Inc.*, 91 Ark. App 77, 208 S.W.3d 236 (2005), this court expounded on the *Baker* dicta, commenting:

> The initial claim in *Baker* was for permanent disability benefits. Therefore, in order to be entitled to permanent disability benefits, the hearing loss had to reach a point of stability. Accordingly, it is our view that the requirement that the injury stabilize is limited to hearing-loss claims, and the *Baker* dicta supports only a narrow view of the stabilization requirement. Further, in hearing-loss claims the annual hearing tests quantify the amount of loss experienced by the claimant. Such annual testing objectively demonstrates the amount of loss and the time period in which the loss occurred, removing all elements of subjectivity as to time and amount of loss from the fact finding.

Appellee argues that the *Pina* dictum, with respect to a stabilization requirement, seems to be based upon the presence of annual hearing tests that objectively demonstrate the amount of loss and the time of loss. In the instant case, yearly tests were not given. However, tests were administered in 1992, 1995, 1998, and 2001. Because the results support the claim that additional hearing loss occurred between 1998 and 2001 when a disability rating was assigned, we hold that appellant's hearing loss was not stabilized in 1998.

Appellee argues that appellant's alternative argument that the statute of limitations is not tolled until the injury is susceptible of an impairment rating is also flawed. This approach would allow for hearing loss injuries to continue until the day the claimant finally sees a doctor who is able to assess an impairment rating. However, in the instant case, appellant did see a doctor and submitted to hearing tests at least four times between 1992 and 2001. He received a disability rating of nine-point-four percent in 2001. He continued to work as a firefighter throughout this period, and Dr. Crocker testified that his hearing loss was attributable to his occupation. Therefore, appellant's claim was not stale.

## II. Substantial evidence claim

Appellant claims that there was not substantial evidence to support the Commission's determination that appellant failed to

prove that he sustained a compensable injury. Appellant argues that the issue is whether the major cause of his hearing loss was his exposure to occupational noise. A claimant is required to prove by a preponderance of the evidence that a work-related injury is the major cause of his disability or need for treatment. Ark. Code Ann. § 11-9-102(4)(E)(ii). "Major cause" is defined as merely more than fifty percent. Ark. Code Ann. § 11-9-102(14)(A). Appellant argues that the preponderance of the evidence shows that the major cause of his hearing loss was his exposure to occupational noise.

Appellant points to the evidence that he worked as a firefighter for sixteen years. In the first six years, he was routinely exposed to running engines and water pumps. He had to ride in open-air styled cabs, and the sirens and horns were located directly above his head. In 1992, he was transferred to Station 2 located at the University of Arkansas. While there, he and others responded to several alarms at the Bud Walton Arena and various residence halls. The firefighters had to search through the entire building while the alarms remained activated. These alarms registered eighty-seven-point-eight and eighty-nine decibels from ten feet away. During his last years as a firefighter, he worked at Station 3 located at Drake Field Airport. While working there he would routinely inspect hangars while mechanics were running jet engines.

Further, appellant's treating physician, Dr. Crocker, provided expert opinion that the major cause of appellant's hearing loss was the occupational noise from his work as a firefighter. Dr. Crocker testified that he considered the decibel readings of various equipment at the Fayetteville Fire Station and the decibel levels of the alarms at the University of Arkansas. He also considered a narrative of the appellant's exposure to work-related and non-work-related noise.

Also, Dr. Doernhoffer, an independent examiner who reviewed the appellant's claim for in-the-line-of-duty disability benefits through the Arkansas Local Police and Fire Retirement System, issued his opinion that the job exposure to noise was the cause of appellant's hearing loss. Therefore, appellant argues that these two opinions are more than enough evidence to prove that occupational noise was the major cause of appellant's hearing loss.

However, the Commission rejected these two opinions, instead relying on testimony from Lewis McGrail and Jimmy Key. McGrail and Key work for Key Audiometrics in Garfield, Arkan-

sas, and perform annual hearing testing, baseline testing, and noise surveys. They performed a noise survey and baseline testing for the City of Fayetteville Fire Department. Key testified that any type of hearing protection would benefit firefighters. McGrail claimed that with exposure to long periods of time without ear protection, a firefighter could sustain some substantial hearing loss.

Appellant argues that the Commission failed to consider that Key and McGrail improperly assumed the use of hearing protection by appellant. Further, both Key and McGrail failed to consider the exposure to false alarms on the university campus because they did not have the decibel readings from these alarms. Finally, appellant claims that Key and McGrail did not consider the decibel levels from the jet engines that appellant was exposed to while stationed at Drake Field.

Nevertheless, appellee claims that there is substantial evidence to support the Commission's findings that appellant did not suffer a compensable injury in the form of a hearing loss as a result of his employment. Appellee reiterates that the Commission is authorized to accept or reject medical opinions. *Estridge v. Waste Mgmt.*, 343 Ark. 276, 33 S.W.3d 167 (2000). Further, appellee points out that McGrail and Key provided the only testimony that carried weight. Appellee argues that these specialists went to the scene, made measurements, compared data to national standards, and reached a different conclusion as to causation. Key testified that ninety percent of the firefighters he surveyed used hearing protection that would reduce sound levels to below ninety decibels. He further testified that a lawnmower puts out 105 decibels, a chainsaw about 100 decibels or more, circular saws can get up to 100 decibels, and a jet engine was about 120 to 140 decibels. Lastly, Key testified that impact noises such as gunshots were the most dangerous. McGrail testified that without hearing protection, appellant would have had a substantial hearing loss had he been exposed to the noise levels captured at the City of Fayetteville. Because the hearing loss was twelve percent over a ten-year period, McGrail testified that appellant probably did use hearing protection. He also noted that if appellant were normal in 1992, then it would indicate appellant never wore ear protection and that he was exposed to a lot more than ninety decibels, but that only changing twelve to thirteen decibels over a ten-year period was a minimal change that may or may not be associated with the

workplace. Therefore, we cannot say that the Commission did not have substantial evidence before it to find that appellant did not sustain a compensable injury.

Accordingly, the statute of limitations does not prevent appellant's claim; however, the Commission's decision that appellant did not sustain a compensable injury is affirmed.

Affirmed.

BIRD, and BAKER, JJ., agree.