2010 Ark. App. 816

**RICHARDSON WASTE, INC. and Guarantee Insurance Company, Appellants**

v.

**Christopher CORCORAN, Appellee.**

**No. CA 10–732.**

Court of Appeals of Arkansas.

Dec. 8, 2010.

78

John Dexter Davis, Wright, Lindsey & Jennings LLP, Little Rock, for appellant.

Gregory Ross Giles, Moore & Giles, L.L.P., Texarkana, for appellee.

JOHN B. ROBBINS, Judge.

Appellee Christopher Corcoran sustained an admittedly compensable injury to his left knee on March 31, 2008, while working for appellant Richardson Waste, Inc. The appellant accepted and paid for an arthroscopy and debridement of the left knee performed by Dr. Norris Knight on June 16, 2008. However, Richardson Waste controverted Mr. Corcoran's claim that he was entitled to a subsequent left-knee arthroscopy and debridement as recommended by Dr. Michael Pappas. After a hearing on the issue, the Workers' Compensation Commission awarded the requested additional medical benefits on the basis that the surgery recommended by

Dr. Pappas was reasonable, necessary, and related to Mr. Corcoran's compensable injury. Richardson Waste now appeals, arguing that the Commission's decision awarding additional medical treatment was not supported by substantial evidence. We affirm.

Arkansas Code Annotated section 11–9–508(a) (Supp.2009) requires employers to provide medical services that are "reasonably necessary in connection with the injury received by the employee." The employee has the burden of proving by a preponderance of the evidence that medical treatment is reasonable and necessary. *Owens Planting Co. v. Graham,* 102 Ark.App. 299, 284 S.W.3d 537 (2008). What constitutes reasonably necessary treatment under the statute is a question of fact for the Commission. *Id.*

Where the sufficiency of the evidence is challenged on appeal, we review the evidence in the light most favorable to the findings of the Commission and will affirm if those findings are supported by substantial evidence. *Wal–Mart Stores, Inc. v. Brown,* 82 Ark.App. 600, 120 S.W.3d 153 (2003). Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* We recognize that it is the Commission's function to determine the credibility of the witnesses and the weight to be given their testimony, *Powers v. City of Fayetteville,* 97 Ark.App. 251, 248 S.W.3d 516 (2007), and that when the medical evidence is conflicting, the resolution of that conflict is a question for the Commission. *Cedar Chem. Co. v. Knight,* 99 Ark.App. 162, 258 S.W.3d 394 (2007). However, the Commission may not arbitrarily disregard medical evidence or the testimony of any witness. *Patchell v. Wal–Mart Stores, Inc.,* 86 Ark.App. 230, 184 S.W.3d 31 (2004).

Mr. Corcoran testified that he is fifty-four years old and works for Richardson Waste driving a trash hauler. He stated that he first experienced a problem with his left knee while working on March 18, 2008. On that day, Mr. Corcoran was climbing down a ladder on the truck when he slipped and experienced knee pain. He reported this to his supervisor but did not visit a doctor or miss any work as a result of that incident.

Mr. Corcoran's compensable injury occurred on March 31, 2008. On that day, he squatted down to change a flat tire and his left knee "popped out." He reported the injury when he returned to the office. According to Mr. Corcoran, he experienced pain and swelling over the next few days. The appellant sent him to a company doctor, who prescribed pain medication. An MRI was performed, and Mr. Corcoran was referred to Dr. Knight, an orthopedic surgeon. Dr. Knight performed surgery on appellee's left knee on June 16, 2008.

Mr. Corcoran testified that the surgery initially helped but that he continued to have a "clicking feeling" in his left kneecap. Dr. Knight placed Mr. Corcoran on restricted work duties for six weeks, and Mr. Corcoran continued to work for Richardson Waste in a light capacity. Dr. Knight returned Mr. Corcoran to regular duty on August 5, 2008. Although he went back to his regular job, Mr. Corcoran testified that "every once in a while I would feel a little click in there and I knew something wasn't right." Mr. Corcoran stated that he continued to experience pain and swelling, which was the same as when he first suffered the compensable injury. As a result of his continuing knee problems, Mr. Corcoran went to the emergency room on September 8, 2008.

Mr. Corcoran continued to visit Dr. Knight complaining of knee problems, and a second MRI was performed on October

1, 2008. On October 16, 2008, at the request of Mr. Corcoran, the Commission ordered a change of physician from Dr. Knight to another orthopedic surgeon, Dr. Pappas. Dr. Pappas subsequently recommended a second left-knee arthroscopy and debridement procedure to repair what he called a probable recurrent tear of the left medial meniscus. However, that surgery was put on hold because Richardson Waste controverted Mr. Corcoran's claim that it was reasonable, necessary, and related to his compensable injury.

Mr. Corcoran indicated that he would like to undergo the surgery recommended by Dr. Pappas to repair his left knee. He maintained that he had never experienced any knee problems prior to the March 18, 2008, incident at work. Mr. Corcoran stated that he continues to experience the same symptoms as he experienced after suffering the March 31, 2008, compensable injury. He stated that the knee-popping, pain, and swelling are still there.

The relevant medical evidence in this case is as follows. The diagnostic report from the initial MRI performed on April 28, 2008, included the finding that "[t]he posterior horn and posterior midbody of the medial meniscus shows free edge fraying and partial radial tears." On May 8, 2008, Dr. Knight reviewed the first MRI and gave the impression of preexisting osteoarthritis as well as a tear of the medial meniscus. Dr. Knight reported, "It is impossible to know how much of the pathology is pre-existing and how much is from the industrial injury." After performing surgery on June 16, 2008, Dr. Knight authored an operative report with the post-operative diagnosis of "osteoarthritis, left knee." Dr. Knight gave details of the procedure, which included taking photographs that showed that the medial meniscus was intact.

The medical report documenting the second MRI performed on October 1, 2008, gave the impression of mildly advanced osteoarthritis. That report also gave the impression that "[t]he current study suggests complex tear of the body of the meniscus and junction of the body and posterior horn including both horizontal and radial tears." After examining the results from the second MRI, Dr. Pappas recommended a second left-knee arthroscopy and debridement to alleviate Mr. Corcoran's continuing knee problems, which included a probable recurrent tear of his left medial meniscus. In a questionnaire dated May 22, 2009, Dr. Pappas was asked the following question:

> Based upon your review of the MRI film from the MRI of October 1, 2008, the radiology reports, and your physical examinations, in your opinion is it more probable than not that he does have a recurrent tear of the left medial meniscus?

Dr. Pappas responded "yes" to the above question.

In responding to a July 16, 2009, questionnaire, Dr. Knight gave opinions that contradicted the opinion of Dr. Pappas. Dr. Knight gave the opinion that the October 1, 2008, MRI showed degenerative changes but no tear of the left medial meniscus. Dr. Knight further indicated that when he performed surgery on July 16, 2008, he noted degenerative changes but not a medial meniscus tear, and that the photographs did not show a tear. Dr. Knight further offered the following opinion:

> I do not feel that Mr. Corcoran has a tear of the medial meniscus but his symptoms are from the osteoarthritis. Certainly in the event that he subsequently does have arthroscopy that shows a tear, it would be post surgery.

Suffice [it] to say MRI evaluations of meniscal tears is less that perfect.

In this appeal, Richardson Waste argues that there is no substantial evidence to support the Commission's finding that the second surgery recommended by Dr. Pappas was reasonable, necessary, and related to Mr. Corcoran's compensable injury. While Dr. Pappas recommended surgery to repair a recurrent tear of the left medial meniscus, appellant submits that there was no recurrent tear because there was no previous tear. Richardson Waste relies on the operative report from the first surgery and opinion of Dr. Knight, wherein Dr. Knight indicated that he did not observe a tear during the surgery, as confirmed by photographs. Richardson Waste asserts that Dr. Pappas's opinion is faulty because Dr. Pappas did not have the benefit of the operative report and was under the mistaken impression that Mr. Corcoran sustained a medial meniscus tear as a result of the compensable incident on March 31, 2008. Appellant further points out that on cross-examination, Mr. Corcoran acknowledged his prior deposition where he indicated that his knee felt normal for about six weeks following the initial surgery. Appellant argues that the Commission erred in arbitrarily disregarding the evidence from Dr. Knight that the left meniscus was intact when he performed the first surgery. Because the medial meniscus tear that Dr. Pappas proposes to repair is not the result of the compensable work injury of March 31, 2008, Richardson Waste contends that the award of additional medical treatment should be reversed.

We hold that there was substantial evidence to support the Commission's finding that the second surgery recommended by Dr. Pappas was reasonable, necessary, and related to Mr. Corcoran's compensable injury. The Commission specifically found Mr. Corcoran to be a credible witness, and it credited his testimony that after the first surgery he continued to experience pain, swelling, and a clicking sensation in his left knee. The medical reports from Dr. Knight following the first surgery document these lingering problems. In reaching its decision, the Commission noted that Mr. Corcoran had never had left-knee problems or the need for any medical treatment prior to suffering his compensable injury. The Commission found that the first surgery was unsuccessful, resulting in Dr. Pappas's recommendation of a subsequent arthroscopy and debridement. The Commission indicated that to find that the compensable left-knee injury of March 31, 2008, had no causal relationship to Mr. Corcoran's need for additional surgery "would be to throw out all common sense and logic." On this record, reasonable minds could reach that conclusion.

We acknowledge, as Richardson Waste points out, that in making his recommendation Dr. Pappas did not have the benefit of Dr. Knight's operative report. In his report dated November 17, 2008, Dr. Pappas stated that the operative report was not available. While the initial MRI detected a meniscus tear, Dr. Knight stated in his operative report that no such tear was observed during surgery. Working with an incomplete history, Dr. Pappas's assessment was "probable recurrent tear of his left medial meniscus." However, whether or not a tear was observed during the first surgery is not dispositive of this case. Dr. Pappas reported that Mr. Corcoran continued to have significant knee pain, rendering him unable to do his job. This knee pain was not present prior to the compensable injury. Dr. Pappas interpreted the second MRI dated October 1, 2008, to show "mildly advanced osteoarthritis, medial compartment, previous partial medial meniscectomy, possibly a recurrent tear of the medial meniscus around

the body, as well as some chondromalacia of the patella." Based on Mr. Corcoran's present condition and diagnosis, Dr. Pappas reported that he would like to proceed with a left-knee arthroscopy with debridement. The Commission determined that this procedure was reasonably necessary treatment for Mr. Corcoran's compensable knee injury, and viewing the evidence in the light most favorable to the Commission's findings, we affirm that determination.

Affirmed.

KINARD and ABRAMSON, JJ., agree.