2012 Ark. App. 196

**WALGREEN CO., Zurich American Insurance Co., and Sedgwick Claims Management Services, Inc., Appellants,**

v.

**Grant W. GOODE, Appellee.**

No. CA 11–957.

Court of Appeals of Arkansas.

March 7, 2012.

Michael R. Mayton, Little Rock, for appellant.

Steven R. McNeely, Little Rock, for appellee.

JOHN B. ROBBINS, Judge.

⌞₁⌟Appellant Walgreen Company [1] appeals the award of workers' compensation benefits to its employee Grant Goode, who filed

---

1. The insurance carriers, Zurich American Insurance Company and Sedgwick Claims Management Services, Inc., are also appellants of record. For clarity, we will refer to only the insured employer, Walgreen, as the appellant in this opinion.

a claim for benefits related to mid- and low-back injuries he said he sustained at work on August 11, 2006. Goode prevailed on his request as to a gradual-onset thoracic-spine injury, but he did not prevail as to any benefits for his lumbar spine. Related medical treatment,[2] temporary total disability, a five-percent permanent-partial impairment rating, and attorney fees were awarded to him by the Administrative Law Judge. Walgreen appealed to the Workers' Compensation Commission, |₂which affirmed and adopted the ALJ's decision. This appeal followed. Walgreen contends that Goode failed to establish (1) a gradual-onset thoracic injury; (2) that the surgical procedures were reasonably necessary; (3) that he was entitled to any more than nine weeks of TTD; and (4) that he was entitled to the permanent impairment rating. Walgreen essentially attacks every component of the benefits awarded to Goode. We affirm.

▇▇▇▇ We review decisions of the Workers' Compensation Commission to determine whether there is substantial evidence to support them. *Rice v. Georgia Pacific Corp.*, 72 Ark.App. 148, 35 S.W.3d 328 (2000). Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Wheeler Constr. Co. v. Armstrong*, 73 Ark.App. 146, 41 S.W.3d 822 (2001). We review the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings. *Geo Specialty Chem. v. Clingan*, 69 Ark.App. 369, 13 S.W.3d 218 (2000). It is the Commission's province to weigh the evidence and determine what is most credible. *Minn. Mining & Mfg. v. Baker*, 337 Ark. 94, 989 S.W.2d 151 (1999); *Martin Charcoal, Inc. v. Britt*, 102 Ark.

App. 252, 284 S.W.3d 91 (2008); *Buford v. Standard Gravel Co.*, 68 Ark.App. 162, 5 S.W.3d 478 (1999). The Commission has the authority to accept or reject a medical opinion and the authority to determine its probative value. *Adams v. Bemis Co., Inc.*, 2010 Ark. App. 859, 2010 WL 5129957; *Poulan Weed Eater v. Marshall,* 79 Ark.App. 129, 84 S.W.3d 878 (2002). The standard of review requires that we affirm if reasonable minds could reach the Commission's decision; we do not determine whether the evidence could support a contrary finding. *St. Joseph's Mercy Med. Ctr.* |₃*v. Redmond,* 2012 Ark. App. 7, 388 S.W.3d 45; *Sharp Cnty. Sheriff's Dep't v. Ozark Acres Improvement Dist.*, 75 Ark. App. 250, 57 S.W.3d 764 (2001).

The ALJ heard this claim in November 2010. Goode testified first. He stated that he was forty-four years old and 6′ 3″ tall. Goode acknowledged that when he was in high school, he suffered lumbar herniations at L4–5 and L5–S1 that required surgical intervention in 1984. He admitted that he had intermittent low-back pain since that time; he said he sought chiropractic care when he had muscle or back pain after 1984.

Goode became a licensed pharmacist in 1990. He worked other jobs in his family's businesses (a mortgage company, a manufactured home outlet, and a pest control service) as well as in pharmacies over the next several years. Goode's pharmacy license was not current when he was hired by Walgreen on July 31, 2006. To get his license current, he was required to first complete 240 hours as a pharmacy technician. Walgreen also required that he complete fifty hours of computer training to become familiar with company practices and policies. He said he was working at a

---

**2.** Goode was found to have failed to notify his employer of the work injury until November 22, 2006, so the employer's liability for medi-

cal treatment did not begin until that date. Goode does not appeal that finding.

very busy Conway pharmacy to complete his training.

As a pharmacy technician, he was required to reach down to ankle level to retrieve containers for medication and to reach across a waist-high counter to place the filled medications in a bin. He performed this duty over and over, standing in one place. On Friday, August 11, 2006, Goode clocked in to begin work at 8:22 a.m. Goode said that at around 11:00–11:30 a.m., his mid-back began tightening and stiffening up with "real sharp pain." When he sat down for computer training that afternoon, he said the pain felt like a ruptured disc in his mid-back.

Goode treated his pain at home with ibuprofen, acetaminophen, and ice packs, but the pain did not subside. He first sought medical treatment for his back from Drs. Lamey and McGehee, both chiropractors, beginning on August 29 with the hope that he could resolve his back pain manually. Thereafter, Goode took a trip he planned prior to being employed by Walgreen to the Ukraine for about two weeks, returning to work in mid-September at the Russellville pharmacy. He said he just used ice packs and over-the-counter pain relievers. He did not file a workers' compensation claim until November 22, 2006. He said this was prompted when a manager took issue with his use of a chair in the pharmacy.

Goode first saw Dr. Ghormley, an orthopedist, in February 2007 for his mid-back complaints. A March 27, 2007 MRI of his thoracic spine revealed a small, focal central disc protrusion and small annular tear at T6–7, along with mild degenerative changes at T9–10 and T10–11. Dr. Ghormley referred him to orthopedic surgeon Dr. Saer, who he saw on August 28, 2007. Dr. Saer noted the quick onset of symptoms after his being hired; he read the MRI as showing "some desiccation and early degeneration at T6–T7 with a small central herniation." Dr. Saer recommended non-operative care, like physical therapy and injections to treat his pain. At some point, Goode was moved to a less strenuous Walgreen pharmacy job in Salem, Arkansas.

Goode traveled to Florida in September 2007 to the Laser Spine Institute, seeking a consultation about possible laser treatment for his thoracic spine problems. After a consultation, he changed his mind about proceeding with this doctor.

In November 2007, Goode sought the care of a neurosurgeon in California, Dr. Chiu, who operated on his thoracic and lumbar spine on November 15, 2007. Dr. Chiu reported evidence of herniations at T5–6, T6–7, L4–5, and L5–S1, which he believed were "post traumatic" and "a result of the work related injury dated 08/11/06." Because conservative treatment failed, Dr. Chiu recommended "provocative thoracolumbar discograms and microdecompressive thoracolumbar discectomy" to treat the thoracic herniations. Dr. Chiu opined that this was a much more cost effective, less invasive treatment that would require far less recovery time than traditional spinal discectomies.

This was the first time Goode missed work due to his back problems. He received facet-joint injections to T7–8 and T8–9 on December 17, 2007. In February 2008, Goode received a nerve-blocking procedure, and in March 2008, Dr. Chiu operated again to treat recurrent T6–7 herniation by repeat discography and discectomy. Dr. Chiu opined with certainty that Goode was injured at work on August 11, 2006, and that this precipitated his thoracic disc symptoms.

For each of these procedures, Goode said he was off work for about three weeks, and thereafter he would work up to

twenty hours per week for his family businesses if he was able to sit. He described his work as more managerial than anything else. He drew up to $3600 per month from the family businesses as he needed, but he said this was substantially less than his full salary as a pharmacist. His tax return for 2007 showed a gross income of $175,000, the majority of which was earned at Walgreen.

Goode believed he received positive results after Dr. Chiu's treatments, and Dr. Chiu released him to work July 21, 2008. Even so, Goode did not return to work for the pharmacy and instead continued with physical therapy. He was given a five-percent permanent partial impairment rating for his mid-back procedures by Dr. Chiu in November 2008 when Goode was deemed at maximum medical improvement. Goode said that his mid-back hurts if he engages in any activity for more than approximately forty minutes, if the activity involves standing or bending.

The two chiropractors and Dr. Chiu directly related his thoracic symptoms to his work on August 11, 2006. In July 2009, Dr. Saer was asked to review the entirety of Goode's medical records to date. Dr. Saer opined that Goode's problems related to preexisting degenerative disc disease and the natural progression of it. Also in July 2009, Dr. Thomas, a neurosurgeon, was asked to review Goode's medical records, and he agreed with Dr. Saer that the existence of degenerative change at multiple levels in his thoracic spine was the cause of his pain, not the work.

Dr. Lawrence, Goode's long-time family physician, offered a letter in which he stated his belief that Goode did not have any ongoing back pain until this work event. Goode's mother testified, corroborating her son's testimony.

On this evidence, the ALJ rendered his opinion, in which he rejected Goode's claim of a specific-incident thoracic injury but believed that Goode carried his burden of demonstrating a gradual-onset thoracic injury based upon his credible description of his work duties. The ALJ credited the opinions of those medical providers—Drs. McGehee (chiropractor) and Chiu (surgeon)—who believed that his herniations and annular tear were directly related to his work and the major cause for the need for treatment. He rejected the physicians' opinions—Drs. Saer and Thomas—that contended Goode suffered solely from preexisting degenerative change in his spine and did not need surgical intervention. The ALJ also credited Goode's mother and his family physician in their belief that Goode never had prior thoracic back problems. The ALJ found the lumbar complaints unrelated to his work because he first noticed low-back pain in mid-September 2006 and first reported it to his chiropractor in mid-October 2006, removed in time from August 2006 and after his long trip to the Ukraine.

The ALJ found that Goode was entitled to reasonable and necessary treatment of his thoracic injury, to include the surgeries performed by Dr. Chiu. Walgreen relied on the opinions of Drs. Ghormley, Thomas, and Saer who opined that only conservative care would be warranted to treat his preexisting degenerative problems. The ALJ found Dr. Chiu's opinion carried greater weight and that Goode was entitled to the provocative thoracic discograms and microdecompressive thoracic discectomies. Goode's stated post-surgical improvement was noted as a factor in this decision.

Goode sought TTD from November 14, 2007 (when Dr. Chiu first operated) to November 7, 2008 (when Dr. Chiu finally gave him a rating and declared him at maximum medical improvement). Walgreen contested any TTD, but if it was

given, Walgreen argued that he was not entitled to TTD while he worked and drew income from his family businesses, and in any event it should end on July 21, 2008 (when Dr. Chiu released Goode ⌊₈to return to work with restrictions). The ALJ found Goode entitled to TTD from November 14, 2007 to July 21, 2008 because Goode did not replace his pharmacy job but instead continued work for his family on the side as he had already done.

The ALJ awarded Goode a five-percent permanent-partial impairment rating based upon his own assessment of two-thoracic-disc-level surgical treatment as applied to the AMA Guides. He found that the major cause of the impairment was his compensable injury. Attorney fees were also awarded. Walgreen was determined to be entitled to a set off for any short-term benefits or group health-insurance benefits provided. By a 2–1 decision, the full Commission adopted the ALJ's decision and this appeal followed.

◼ First, Walgreen takes issue with the finding that Goode proved a compensable gradual-onset thoracic injury.[3] Walgreen contends that Goode failed to prove that his thoracic maladies were the major cause for the need for treatment and failed to prove a causal connection between his work and the thoracic problems. It focuses on these facts: (1) that Goode had worked for Walgreen only eleven days before the alleged injury occurred; (2) that Goode had a history of major back problems dating back to 1984; and (3) that two physicians attributed his treatment to preexisting degenerative disc disease. These are relevant facts, but the ALJ specifically accepted the opinions of his chiropractors and Dr. Chiu over Drs. Thomas and Saer. The ALJ noted the existence of

degenerative changes but found the primary cause to be a traumatic work-based injury; the ALJ was aware of the 1984 lumbar problems and ⌊₉rejected compensation for those problems. The ALJ deemed Goode to be a credible witness, in contrast to Walgreen's argument that he is not. This claim was driven by credibility of witnesses and the weight to be afforded to testimony and medical evidence, a function left solely to the Commission. *Whitson v. J.B. Hunt Transp., Inc.*, 2011 Ark. App. 336, 2011 WL 1707626. We affirm the finding of a compensable thoracic injury.

◼ Walgreen next attacks the award of medical benefits, specifically the surgical procedures performed by Dr. Chiu, as not reasonable or necessary for the thoracic injury. What constitutes reasonable and necessary medical treatment is a question of fact for the Commission to resolve. Ark.Code Ann. § 11–9–508 (Repl. 2002); *Foster v. Kann Enters.*, 2009 Ark. App. 746, 350 S.W.3d 796. Walgreen asserts that only Dr. Chiu recommended these "risky" procedures, positing the other physicians' opinions in contrast to his. But again, the weight and probative value of medical opinions is a function left to the Commission, not our court on appeal. *Id.* Substantial evidence exists to support the award of Dr. Chiu's treatment as reasonable and necessary for the thoracic injury.

Walgreen also argues that no TTD was warranted, and even if warranted after the surgical procedures, it would be limited to only those weeks between his first surgical procedure in November 2007 and July 21, 2008, when he did not earn income from his family businesses. We disagree.

◼ To be entitled to TTD, a claimant must prove that he remains within his

---

**3.** Goode did not prevail on his alternative basis to award benefits—that being a specific-incident injury to his thoracic spine. For this reason, Walgreen's arguments on that subject are immaterial.

healing period and suffers a total incapacity to earn wages. *RPC, Inc. v. Hargues,* 2011 Ark. App. 264, 2011 WL 1319384. "Disability" means incapacity because of the compensable injury to earn, in the same or any other employment, the wages that the employee was receiving at the time of the compensable injury. Ark. Code Ann. § 11–9–102(8) (Repl.2002). For purposes of defining disability, "any other employment" means any other employment in lieu of the one in which the employee was injured. *Wal–Mart Stores, Inc. v. Westbrook,* 77 Ark.App. 167, 72 S.W.3d 889 (2002)(citing *Stevens v. Mountain Home Sch. Dist.,* 41 Ark.App. 201, 850 S.W.2d 335 (1993)). When there is tandem employment, the other job is not "any other employment" undertaken in lieu of the employment in which the worker was injured. *See id.* Section 11–9–102(8) has not been revised by our legislature since our interpretation in the *Stevens* and *Wal–Mart* opinions; it and our opinions remain good law. In this claim, the evidence was that Goode supplemented his income by intermittent work with his family's businesses, as he had done for years. Thus, the ALJ's finding, that he was entitled to TTD while he remained in his healing period and was unable to earn his pharmacist wages in other employment, is supported by substantial evidence.

Lastly, Walgreen argues that the ALJ's decision to award Goode a five-percent permanent-partial disability rating is not supported by substantial evidence. It argues specifically that (1) the rating stems from Goode's preexisting degenerative disc disease and the "risky, unreasonable, unnecessary, and questionable surgical procedures on his thoracic spine," and (2) Goode cannot satisfy the "major cause" requirement. We disagree.

The existence and extent of physical impairment must be supported by objective and measurable physical or mental findings. Ark.Code Ann. § 11–9–704(c)(1)(B) (Repl.2002). Permanent benefits shall be awarded only upon a determination that the compensable injury was the "major cause" of the disability or impairment. Ark.Code Ann. § 11–9–102(4)(F)(ii)(a) (Repl.2002). "Major cause" means more than fifty percent of the cause, which the claimant must establish by a preponderance of the evidence. Ark.Code Ann. § 11–9–102(14)(A) (Repl.2002); *see also Yellow Transp., Inc. v. Bennett,* 2009 Ark. App. 424, 2009 WL 1478007.

Here, the ALJ relied on Dr. Chiu's November 7, 2008 report for the objective findings to support a rating. Therein, Dr. Chiu noted the surgical interventions on his thoracic spine. The ALJ referenced the AMA Guides himself, assigning a five-percent rating due to those two surgical treatments in the thoracic spine. The ALJ attributed the major cause of the rating to the compensable thoracic injury. Undoubtedly, there is substantial evidence to support objective findings correlating to a five-percent permanent-impairment rating for Goode's thoracic spine. Causation is a question of fact, and the evidence supported thoracic herniations that required decompression. We affirm the ALJ on this finding.

After viewing the evidence and all inferences in the light most favorable to the Commission, which affirmed and adopted the ALJ's findings, we hold that the decision is supported by substantial evidence.

Affirmed.

WYNNE and ABRAMSON, JJ., agree.