SLIP OPINION



Cite as 2013 Ark. App. 719

# ARKANSAS COURT OF APPEALS

DIVISION I
**No.** CV-13-240

|  |  |
|---|---|
| PENNY STROTHER<br><br>                APPELLANT<br><br>V.<br><br>LACROIX OPTICAL,<br>MASSACHUSETTS BAY INSURANCE<br>COMPANY, AND DEATH &<br>PERMANENT TOTAL DISABILITY<br>TRUST FUND<br>                APPELLEES | **Opinion Delivered** December 4, 2013<br><br>APPEAL FROM THE ARKANSAS<br>WORKERS' COMPENSATION<br>COMMISSION [No. F406963]<br><br><br><br>AFFIRMED |

## WAYMOND M. BROWN, Judge

Appellant appeals the Arkansas Workers' Compensation Commission's (Commission) reversal of the administrative law judge's (ALJ) decision with respect to finding that claimant was permanently and totally disabled (PTD). On appeal, claimant argues that (1) the Commission's reversal was unsupported by substantial evidence and (2) the Arkansas Workers' Compensation Act (the Act) is unconstitutional in violation of claimant's right to substantive and procedural due process.[1] We affirm.

Appellant worked for appellee LaCroix Optical as a blocker. In that position, she used various tools and processes to make lenses. In the course of and within the scope of that employment, she suffered a neck injury on or about April 19, 2004. Appellee accepted the

---

[1]The ALJ found that the Act is constitutional.

injury as compensable and paid benefits pursuant to a 16% permanent partial disability (PPD) rating by Dr. Karl Detwiler. Appellees also paid for appellant's medical expenses, which included four surgeries to her cervical spine. Appellant reached maximum medical improvement on February 27, 2006.[2]

After her healing period ended, appellant brought an action seeking to be declared totally and permanently disabled and arguing that the Act was unconstitutional.[3] By opinion on June 4, 2012, the ALJ found that appellant proved by a preponderance of the evidence that she was permanently and totally disabled and that the Act was constitutional.[4] Appellee timely appealed that determination to the Commission on July 3, 2012.

In an opinion filed February 12, 2013, the Full Commission (1) found that appellant failed to prove she was permanently and totally disabled, thereby reversing the ALJ, and instead awarded her a thirty percent wage loss disability; and (2) dismissed appellant's constitutional challenge to the Act due to her failure to prove that the Act was unconstitutional.

---

[2]Both parties stipulated to this date.

[3]Appellant also argued that she was entitled to a controverted attorney's fee with respect to the claim for permanent and total wage loss disability benefits. Appellees argued that it was entitled to credit for an alleged overpayment of permanent partial disability benefits.

[4]The ALJ also found that appellant was entitled to a controverted attorney's fee and found that appellee was entitled to a credit in the amount of $26,965 for permanent partial disability benefits that were overpaid to appellant.

SLIP OPINION

I. *Substantial Evidence*

For her first argument, appellant argues that the Commission's reversal was unsupported by substantial evidence. The appellate court reviews the decision of the Commission and not that of the ALJ.[5] When reviewing a decision of the Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the findings of the Commission and affirm that decision if it is supported by substantial evidence.[6] Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.[7] Questions regarding the credibility of witnesses and the weight to be given to their testimony are within the exclusive province of the Commission.[8] The Commission has the authority to accept or reject a medical opinion and the authority to determine its probative value.[9] We do not determine whether the evidence could support a contrary finding.[10] We only reverse the Commission's decision if

---

[5]*Powers v. City of Fayetteville*, 97 Ark. App. 251, 254, 248 S.W.3d 516, 519 (2007) (citing *High Capacity Prods. v. Moore*, 61 Ark. App. 1, 962 S.W.2d 831 (1998)).

[6]*Vijil v. Schlumberger Tech. Corp.*, 2013 Ark. App. 346, at 5, ___ S.W.3d ___ (citing *Raulston v. Waste Mgmt., Inc.*, 2012 Ark. App. 272, ___ S.W.3d ___).

[7]*Id.*

[8]*Ozark Natural Food v. Pierson*, 2012 Ark. App. 133, at 9, 389 S.W.3d 105, 110 (citing *Evans v. Bemis Co. Inc.*, 2010 Ark. App. 65, 374 S.W.3d 51).

[9]*Id.* (citing *Adams v. Bemis Co. Inc.*, 2010 Ark. App. 859; *Poulan Weed Eater v. Marshall*, 79 Ark. App. 129, 84 S.W.3d 878 (2002)).

[10]*Walgreen Co. v. Goode*, 2012 Ark. App. 196, at 2, 395 S.W.3d 398, 400 (citing *St. Joseph's Mercy Med. Ctr. v. Redmond*, 2012 Ark. App. 7, 388 S.W.3d 45; *Sharp Cnty. Sheriff's Dep't v. Ozark Acres Improvement Dist.*, 75 Ark. App. 250, 57 S.W.3d 764 (2001)).

we are convinced that fair-minded persons could not have reached the same conclusion with the same facts before them.[11]

In support of her contention that she is permanently and totally disabled and unable to work, appellant presented opinions from two vocational specialists. On August 27, 2009, Robert White performed a vocational assessment on appellant. In his vocational evaluation, dated September 2009, he concluded that appellant "will not be able to return to the labor force now or in the future due to her past medical history." Sarah Moore performed a vocational assessment on appellant on December 8, 2011. In her vocational report, dated January 31, 2012, Ms. Moore concluded that appellant was "unable to sustain competitive employment based on the limitations imposed by her pain and her residual functional capacity[.]" However, evidence from two of appellant's treating physicians contradicted the vocational specialists.

On May 4, 2005, after stating that appellant complained "bitterly" that she was unable to work, Dr. Karl Detwiler reported "I believe she is able to do more than she actually is." On November 28, 2005, Dr. Detwiler reported that appellant could increase her activity and that she could return to part-time work with "a ten pound lifting restriction, no repetitive bending, stooping, bending, climbing, looking up, looking down or side-to-side." On January 11, 2006, Dr. Tyler Boone noted that appellant "probably will need permanent restrictions to avoid any job, which involves repetitive reaching away from body overhead." However, Dr. Boone went on to note that although he did not know if appellant would ever

---

[11]*Ozark Natural Food*, *supra*.

SLIP OPINION

be able to return to her previous type job position, "she could possibly be retrained." On February 27, 2006, Dr. Detwiler agreed with Dr. Boone that appellant could return to work with restrictions and advised that "[j]ob vocational evaluation or subsequent retraining would benefit Ms. Strother" because she had reached maximum medical improvement. Finally, on June 14, 2006, Dr. Detwiler stated "I advised her that she needs to return to work with a 10 – lbs. restriction and four hours a day for the first two weeks and progressing to 10 – lbs and eight hours a day." The opinions of Drs. Detwiler and Boone were corroborated by that of Dr. Peggy Brown, who completed a neurology consultation on appellant on October 11, 2010. Dr. Brown opined that appellant was "able to use all her extremities and is fully ambulatory[,]" though she "would not be able to perform any tasks that require heavy lifting."

When the Commission weighs medical evidence and the evidence is conflicting, its resolution is a question of fact for the Commission.[12] The Commission was within its authority to give more weight to the opinions of Drs. Detwiler and Boone, as appellant's treating physicians, than to the vocational opinions of White and Moore. We find no error.

The only other evidence supporting appellant's contention that she is permanently and totally disabled was her own testimony and that of her husband. Appellant testified that "all but an hour and a half per day I am in bed typically." She also testified that on days when she feels good, she goes into town, "[b]ut the pain will be bad the next day." Appellant's husband

---

[12]*Powers v. City of Fayetteville*, 97 Ark. App. 251, 254, 248 S.W.3d 516, 519 (2007) (citing *Green Bay Packaging v. Bartlett*, 67 Ark. App. 332, 999 S.W.2d 695 (1999)).

testified that appellant "had probably three good days per month in which she can get out of bed, get dressed, maybe go for a walk"; will be "lying in bed" the day following a "good day"; has "one bad day per week" when she "just stays in her bedroom"; and "might be productive on a typical day a total of three to three-and-a-half hours." And though he stated that appellant's back and feet were not affected by appellant's April 2004 injury, he stated that "[a]ny problems with those areas developed after that."

The Commission is not bound to accept the testimony of any witness, even if uncontradicted.[13] In this case, the testimony of appellant and her husband was contradicted not only by medical opinion, as discussed above, but also by surveillance video, which showed appellant squatting and bending to look at items on the bottom of a display in a store and driving and walking, showing no apparent difficulties with, or afflictions to, any area of her body. Steven Turnage, insurance defense private investigator, specifically testified that appellant had a "normal gait" and no apparent difficulty in walking in contrast to other individuals he had observed in other investigations who "walked in an odd or different manner due to injuries or accidents." He further testified that he "did not see [appellant] rest or take a break" during the time he surveilled her and "did not see grimaces or other pain indicators" in appellant.

Appellant claims that the "Commission either ignored or unduly minimized evidence," namely her evidence. However, the Commission's opinion shows that it did neither as it states

---

[13]*Hickey v. Gardisser Constr.*, 2009 Ark. App. 725, at 9, 377 S.W.3d 259, 265 (citing *Ester v. Nat'l Home Ctrs, Inc.*, 335 Ark. 356, at 363–64, 981 S.W.2d 91, 95 (1998)).

SLIP OPINION

(1) "the opinions of treating physicians Dr. Boone and Dr. Detwiler are entitled to more evidentiary weight than the opinions of Robert White and Sarah Moore," (2) Dr. Boone and Dr. Detwiler's opinions were corroborated by the February 2012 surveillance video, and (3) "[t]here is no probative evidence of record corroborating the conclusions of Robert White and Sarah Moore that the claimant cannot return to gainful employment in any capacity." We cannot say that the Commission's decision was not supported by substantial evidence; therefore, we find no error.

## II. *Constitutional Law Arguments*

In her second argument, appellant argues that the Act in its entirety is unconstitutional. Specifically, appellant argues that (1) the Commission's ability to reverse a specific finding of an ALJ regarding credibility of the claimant is a violation of her right to procedural and substantive due process as granted in the Arkansas Constitution, article 2, section 3; and (2) the provisions of the Arkansas Workers' Compensation Law, which allow the credibility findings of the ALJ to be disregarded, in effect places the judicial functions of the adjudication of claims for injured workers under the executive branch of the State of Arkansas in violation of Arkansas Constitution, article 2, sections 2, 18 and 29. Appellant's counsel has made these identical arguments in other cases.[14]

---

[14] *See Prock v. Bull Shoals Landing*, 2012 Ark. App. 47, 390 S.W.3d 78; *Sykes v. King Ready Mix, Inc.*, 2011 Ark. App. 271; *Rippe v. Logging*, 100 Ark. App. 227, 266 S.W.3d 217 (2007); *Williams v. Johnson Custom Homes*, 100 Ark. App. 60, 264 S.W.3d 569 (2007); *Stutzman v. Baxter Healthcare Corp.*, 99 Ark. App. 19, 256 S.W.3d 524 (2007); and *Stiger v. State Line Tire Service*, 72 Ark. App. 250, 35 S.W.3d 325 (2000).

SLIP OPINION

SLIP OPINION

In support of this argument, appellant quotes a footnote from *Kimbell v. Association of Rehabilitation Industry*, in which our supreme court expressed a willingness to address the issue of whether a constitutional violation occurs when the Commission and reviewing court are permitted to ignore the findings of the law judge, the only adjudicator who sees and hears witnesses.[15] Appellant also quotes *Scarbrough v. Cherokee Enterprises*,[16] in which our supreme court noted that deprivation of due process of law might be a compelling reason for holding that the initial fact-finder's determinations of facts, where credibility is an issue, cannot be ignored. These cases note this court's openness to addressing constitutional claims involving the Act, but neither contains any holdings that support appellant's present argument. Appellant's counsel does not acknowledge any precedents that have already addressed these arguments, and therefore does not distinguish this appeal from those precedents, nor does counsel proffer an argument for reconsideration of settled law. Having previously been submitted to this court, we have rejected these arguments.[17] We, again, reject these arguments and affirm the Commission's decision affirming the constitutionality of the Act.

Affirmed.

WHITEAKER and VAUGHT, JJ., agree.
*Frederick S. "Rick" Spencer*, for appellant.
*Friday, Eldredge & Clark, LLP*, by: *Guy Alton Wade* and *Travis J. Fowler*, for appellees.

---

[15]366 Ark. 297, 235 S.W.3d 499 (2006).

[16]306 Ark. 641, 816 S.W.2d 876 (1991).

[17]*See Long v. Wal-Mart Stores, Inc.*, 98 Ark. App. 70, 250 S.W.3d 263 (2007); and *Sykes v. King Ready Mix*, 2011 Ark. App. 271