Hulda STEPHENSON *v.* TYSON FOODS, INC.

CA 99-1104                                    19 S.W.3d 36

Court of Appeals of Arkansas
Divisions I and II
Opinion delivered May 17, 2000

*Kenneth E. Buckner, P.A.*, by: *Kenneth E. Buckner*, for appellant.

*Bassett Law Firm*, by: *Earl Buddy Chadick*, for appellee.

SAM BIRD, Judge. Hulda Stephenson appeals a decision of the Workers' Compensation Commission that denied her benefits for a herniated cervical disc. The Commission found that

she had failed to connect the herniated disc to her compensable injury. Stephenson argues that the decision is not supported by substantial evidence. We agree, and, consequently, reverse and remand.

At the hearing before the administrative law judge it was stipulated that Ms. Stephenson sustained a compensable injury on January 2, 1997, when she was knocked unconscious by at least three large plastic-coated boxes, weighing as much as 75 pounds each and designed to hold 2000 pounds of chicken, that fell from a second-floor catwalk and hit her in the neck, back, and shoulder while she was working on the first floor.

Stephenson was treated at HealthCare Plus, then referred to Dr. John Lytle, an orthopedist, who diagnosed a shoulder contusion and, on February 4, released her to return to work without restrictions and without the need to return for further treatment. However, Stephenson continued to experience severe pain, so she took a lot of ibuprofen. When the ibuprofen began to upset her stomach, she consulted her family physician, Dr. Ron Tanner. Dr. Tanner ordered a bone scan that showed a compression fracture at T9-10. Tyson sent Stephenson back to Dr. Lytle, who treated her for the compression fracture that Dr. Tanner had diagnosed, and released her again on April 7 to return to work with limited activities.

Stephenson continued to work after her second release by Dr. Lytle, while continuing to see her own doctors in an attempt to find out what was wrong with her. Because she continued to experience pain, Stephenson returned to Dr. Tanner at the end of April, and he referred her to Dr. Terrell Bishop, a neurologist. Dr. Bishop attempted to put Stephenson on light-duty work, but Tyson's workers' compensation claims coordinator would not accept the work restriction because Dr. Bishop was not Stephenson's treating physician. So, Stephenson returned to Dr. Bishop, and he removed her from work completely. Finally, near the end of July 1997, Dr. Bishop discovered that Stephenson had herniated cervical discs at C4-5 and C6-7. Dr. Bishop then referred Stephenson to Dr. Ronald N. Williams, a neurosurgeon, who performed an anterior cervical fusion on October 16, 1997.

The administrative law judge awarded temporary total disability benefits from July 21 through December 2, 1997; permanent

disability benefits for a nine-percent permanent impairment; all related medical treatment, including that obtained from Drs. Lytle, Bishop, Tanner, and Williams subsequent to July 21, 1997; and maximum attorney fees. The Commission reversed, holding that Stephenson had failed to show a connection between her compensable injury of January 2, 1997, and her herniated cervical discs that were diagnosed in July.

■ Stephenson argues on appeal that the Commission's finding was not based on substantial evidence. In a workers' compensation case, the claimant has the burden of proving by a preponderance of the evidence that his claim is compensable. *Jordan v. Tyson Foods, Inc.*, 51 Ark. App. 100, 911 S.W.2d 593 (1995); *Bates v. Frost Logging Co.*, 38 Ark. App. 36, 827 S.W.2d 664 (1992); *Wolfe v. City of El Dorado*, 33 Ark. App. 25, 799 S.W.2d 812 (1990). The claimant must also prove a causal connection between the work-related accident and the later disabling injury. *Lybrand v. Arkansas Oak Flooring Co.*, 266 Ark. 946, 588 S.W.2d 449 (1979). The determination of whether the causal connection exists is a question of fact for the Commission to determine. *Jeter v. B.R. McGinty Mech.*, 62 Ark. App. 53, 968 S.W.2d 645 (1998); *Carter v. Flintrol, Inc.*, 19 Ark. App. 317, 720 S.W.2d 337 (1986).

■ On appeal, we view the evidence in the light most favorable to the Commission's findings and will affirm if those findings are supported by substantial evidence. *Morelock v. Kearney Co.*, 48 Ark. App. 227, 894 S.W.2d 603 (1995). Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *College Club Dairy v. Carr*, 25 Ark. App. 215, 756 S.W.2d 128 (1988). To reverse a decision of the Commission, we must be convinced that fair-minded persons, with the same facts before them, could not have reached the conclusion arrived at by the Commission. *Franklin Collier Farms v. Chapple*, 18 Ark. App. 200, 712 S.W.2d 334 (1986).

■ Where a claim is denied because the claimant has failed to show entitlement to compensation by a preponderance of the evidence, the substantial-evidence standard of review requires us to affirm the Commission if its opinion displays a substantial basis for the denial of the relief sought. *Jeter v. B.R. McGinty Mech.*, 62 Ark. App. 53, 968 S.W.2d 645 (1998); *Linthicum v. Mar-Bax Shirt Co.*, 23 Ark. App. 26, 741 S.W.2d 275 (1987). These rules insulate the

Commission from judicial review and properly so, as it is a specialist in this area and we are not. *Wade v. Mr. C. Cavenaugh's*, 25 Ark. App. 237, 756 S.W.2d 923 (1988). However, a total insulation would obviously render our function in these cases meaningless. *Boyd v. Dana Corp.*, 62 Ark. App. 78, 966 S.W.2d 946 (1998); *Boyd v. Gen. Indus.*, 22 Ark. App. 103, 733 S.W.2d 750 (1987).

■ The Commission found that Stephenson had failed to follow the proper procedure for changing physicians, and, for that reason, was not entitled to benefits for all the medical care she received from doctors other than Dr. Lytle. When a claimant seeks a change of physician, she must petition the Commission for approval. Arkansas Code Annotated section 11-9-514(a)(2)(A) (Repl. 1996) provides:

> If the employer selects a physician, the claimant may petition the commission one (1) time only for a change of physician, and if the commission approves the change with or without a hearing, the commission shall determine the second physician and shall not be bound by recommendations of claimant or respondent.

However, if Tyson failed to give Stephenson the change-of-physician form after her injury, Stephenson was not required to petition the Commission in order to be treated by a competent doctor. An exception exists in Ark. Code Ann. § 11-9-514(c), which states:

> (1) After being notified of an injury, the employer or insurance carrier shall deliver to the employee, in person or by certified or registered mail, return receipt requested, a copy of a notice, approved or prescribed by the commission, which explains the employee's rights and responsibilities concerning change of physician.
>
> (2) If, after notice of injury, the employee is not furnished a copy of the notice, the change of physician rules do not apply.
>
> (3) Any unauthorized medical expense incurred after the employee has received a copy of the notice shall not be the responsibility of the employer.

It is not disputed that the employer chose Dr. Lytle to treat Stephenson for her injuries. The Commission stated in its opinion:

> At the time of the claimant's injury, the appropriate form advising claimant of her rights and duties was Commission Form N. Claim-

ant acknowledged at the hearing that the Form N introduced into evidence bore her handwriting at the top and her signature at the bottom. However, claimant denied that she placed the date, "January 2, 1997," on the form or that she signed the form on the date of her injury. Rather, claimant alleged that she completed the form at the time she was hired, approximately six months prior to her injury. *We find claimant's allegations with regard to when she was provided the Form N to be lacking in proof. Aside from claimant's own self-serving testimony regarding when she received Form N, she has presented no corroborating evidence to explain why she would have received and signed this form at the time she was hired. In our opinion, it does not seem logical that an employer would insist that a Form N be signed in blank even before an injury ever occurred.* (Emphasis added.)

We do not believe that there is substantial evidence to support the Commission's finding that Stephenson received the Form N *after her injury*. Ms. Wilkes, Tyson's workers' compensation claims coordinator, testified that she did not know when Stephenson signed the form because she did not give it to her. She said the procedure at Tyson was for the nurse to give an injured employee a tablet of forms and the change-of-physician form is among them. However, the nurse did not testify for Tyson. From the record, the only substantial evidence is that Tyson had a procedure for providing the notification form to an injured employee that is supposed to be carried out by its nurse. The existence of a company procedure is not proof that the procedure is carried out in every instance.

The Commission relies upon the fact that the form bore Stephenson's signature. But Stephenson testified that the rights-notification form was included among papers she received when she was hired by Tyson and that she signed it at that time, not after she was injured. She testified that the date was not in her handwriting and pointed out that nothing was written in the section labeled "accident information." Furthermore, she said she could not have signed the form after her injury because her shoulder was hurting too bad and that the nurse filled out the accident report for her.

The Commission stated that, in its opinion, "it does not seem logical that an employer would insist that a Form N be signed in blank even before an injury ever occurred." However, the issue this court must resolve is whether the Commission's findings are supported by substantial evidence, not whether the existence or non-existence of evidence of a given fact is "logical." From the record

before us, it appears to be just as logical that the Form N was signed before the injury, as testified to by Stephenson, as it does illogical that the employer would have an employee sign the Form N at the time of her employment, particularly where Stephenson's version of the signing was not refuted by the employer, and where there is other tangible evidence that supports Stephenson's version, such as the inconsistency between Stephenson's signature and the hand-writing of the date that appears on the form adjacent to her signature.

■ Ms. Wilkes also testified that she had explained to Stephenson that she could petition the Commission for a change of physician if she did not agree with Dr. Lytle's treatment. However, Ark. Code Ann. § 11-9-514(c)(1) (Repl. 1996) requires the employer to provide to the injured employee "a copy of a notice, approved or prescribed by the commission,..." We think this language clearly connotes that the notice will be in writing, and that verbal notification does not comply with the requirements of the statute.

■ The Commission held that Stephenson was properly notified of her right to change physicians based solely on her signature at the bottom of the form and company policy. It could not have reached that decision without giving the benefit of the doubt to the employer. The burden to prove delivery of the change-of-physician form was on Tyson. The document bearing only her signature and a date, obviously filled out by someone else, was not substantial evidence to support the Commission's conclusion that Stephenson was given the form after her injury. It would have been a simple matter for Tyson to have had the nurse, who allegedly gave Stephenson the document, testify to that effect. Stephenson's testimony was not rebutted, and there was no proof that she was given the change-of-physician form after her injury, and, thus, no substantial evidence to support the Commission's finding that she was required to seek Commission approval before finding another doctor.

■ There is no question that Dr. Lytle treated Stepehenson for several months and summarily released her twice without ever performing any diagnostic tests or otherwise attempting to discover the cause of her pain. He first treated her for mere bruises (contusions), after at least three seventy-five-pound boxes fell from the floor above and hit her in the shoulder, neck and back, and then he

treated her for a compression fracture, but only after it had been identified by another doctor. The Commission characterized Dr. Lytle's care of Stephenson as "adequate." Fair-minded persons could not reach that conclusion on these facts. The medical care Stephenson received from Dr. Lytle was almost nonexistent. Even though she continued to complain of serious symptoms, Dr. Lytle merely had Stephenson move her neck, shoulder, and arm, and he released her to return to work. The evidence is also clear that the care Stephenson received from Drs. Tanner, Bishop, and Williams was necessary and reasonable, and there is no evidence that the expense of such treatment was any greater than it would have been had it been provided by pre-approved physicians.

The Commission also held that there was no evidence connecting Stephenson's herniated discs to her compensable injury. To the contrary, there is no evidence in the record, medical or factual, to support the Commission's finding that the herniated cervical discs discovered in Stephenson's neck six months after her compensable injury did not occur at the time the boxes fell on her neck and shoulders. Stephenson continuously complained of pain in her neck, shoulders, and back from the time of the injury until July 22, 1997, when Dr. Bishop ordered a cervical MRI. Dr. Bishop reported that claimant's entire history of complaints dated back to January 2, 1997, when she was knocked out by the boxes.

The Commission cites no evidence to support its finding that appellant's herniated discs did not occur in January 1997, because there is no contrary evidence in the record. The objective medical evidence is clear that appellant had two herniated cervical discs, and there is no evidence at all in the record of any non-work-related event that might have caused the herniated cervical discs.

■ We reverse and remand to the Commission for an award of benefits for all the medical care and treatment Stephenson has undergone and all reasonable, necessary, and related medical treatment she may have in the future due to this injury, temporary total disability benefits, permanent disability benefits for her nine percent permanent physical impairment, and maximum attorney's fees.

HART, CRABTREE, and MEADS, JJ., agree.

ROBBINS, C.J., and ROAF, J., concur in part; dissent in part.

J OHN B. ROBBINS, Chief Judge, concurring in part; dissent-
ing in part. I concur with the majority in reversing the
Commission and holding that Ms. Stephenson is entitled to tempo-
rary total disability benefits and permanent partial disability benefits
for her cervical disc herniation, because I believe there was no
substantial evidence that supported the Commission's denial of
these benefits. I cannot agree, however, that there was no substantial
evidence to support the Commission's finding that the medical
treatment Ms. Stephenson received from Drs. Tanner, Bishop, and
Williams was unauthorized.

Following her injury at work, Ms. Stephenson's employer,
appellee Tyson Foods, directed her to HealthCare Plus, who then
referred her to Dr. John Lytle. If Ms. Stephenson wished to change
physicians, she was entitled to petition the Commission for a one-
time-only change. Ark. Code Ann. § 11-9-514(a)(2)(A) (Repl.
1996). Without doing so, however, she was seen thereafter by Drs.
Tanner, Bishop, and Williams. Consequently, medical treatment by
these unauthorized doctors and payment for their services was not
the responsibility of Tyson, unless Tyson failed to give Ms. Stephen-
son notice, after her injury, of her rights and responsibilities per-
taining to a change of physician as required by Ark. Code Ann. §
11-9-514(c). The Commission found that "at the time of the
claimant's injury, the appropriate form advising claimant of her
rights and duties was Commission Form N" and the "Claimant
acknowledged at the hearing that the Form N introduced into
evidence bore her handwriting at the top and her signature at the
bottom." Ms. Stephenson does not appeal these findings, but con-
tends that the date of "January 2, 1997," appearing on the form was
not written by her, and that she signed the form when she was
hired about six months earlier. The Commission held that notice
had been given to Ms. Stephenson, and, therefore, she was required
to petition for a change of physician, which she did not do.

We should affirm the Commission unless there is no substan-
tial evidence in the record that supports its decision. The substantial
evidence standard of appellate review means that the appellate court
must affirm the Commission if fair-minded people could have
reached the same result after reviewing the evidence in the light
most favorable to the result that the Commission reached, *Hubley v.
Best Western-Governor's Inn*, 52 Ark. App. 226, 916 S.W.2d 143
(1996), even if the preponderance of the evidence would indicate a

different result. *Tahutini v. Tastybird Foods*, 18 Ark. App. 82, 711 S.W.2d 173 (1986).

There are two items of evidence that are substantial and support the Commission's finding that Tyson gave the required notice. First, there is tangible evidence consisting of form N dated January 2, 1997, the date of the incident, bearing Ms. Stephenson's signature that was introduced as an exhibit at the hearing. This is the form that the Commission found gives the notice concerning a change of physician that is required by section 11-9-514(c). Secondly, Ms. Felita Wilkes, Tyson's workers' compensation claims coordinator at its Pine Bluff plant, testified that it was standard procedure at Tyson that when an employee is injured and is brought in to see one of the plant nurses, the attending nurse gives the employee a tablet of forms that includes the change of physician rights-responsibility notice form. The nurse explains the forms and asks the employee if the employee understands. The employee is then asked to sign the form.

The majority holds today that the above items of proof do not constitute substantial evidence in support of the Commission's conclusion that Tyson gave Ms. Stephenson the statutory notice. In doing so, the majority has engaged in a de novo consideration of the case, and has weighed the evidence and adjudged the credibility of the witnesses and tangible evidence. This is improper on an appeal from the Workers' Compensation Commission. While we are to view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the findings of the Commission, *Bates v. Frost Logging Co.*, 38 Ark. App. 36, 827 S.W.2d 664 (1999), the majority appears to have considered Ms. Stephenson's testimony which controverted Tyson's proof, then weighed the credibility of this evidence and concluded that Ms. Stephenson's testimony was more credible than Tyson's proof.

The majority opinion also stated that the evidence is "clear that the care Stephenson received from Drs. Tanner, Bishop, and Williams was necessary and reasonable," and that "there is no evidence that the expenses of such treatment was any greater than it would have been had it been provided by pre-approved physicians." I doubt that anyone familiar with this case would dispute these statements; however, one must wonder why these statements appear in the majority opinion. They have no relevance whatsoever to the

substantial evidence standard of review before our court. Even if Drs. Tanner, Bishop and Williams did render reasonable care to Mrs. Stephenson for reasonable charges, this would not convert their status from unauthorized physicians to authorized ones.

While we may be sympathetic to Ms. Stephenson's plight, we should not permit our sympathy to compromise the standard of review that we are obliged to apply. I would affirm the Commission's holding that Tyson gave Ms. Stephenson the required notice concerning a change of physician, and that the treatment rendered to her by Drs. Tanner, Bishop, and Williams was unauthorized.

ROAF, J., joins.