2012 Ark. App. 251

**RAY BAXTER, P.A., and Union
Standard Insurance Company,
Appellants**

v.

**Jimmy Ray BAXTER and Second
Injury Fund, Appellees.**

No. CA 11–843.

Court of Appeals of Arkansas.

April 11, 2012.

Rehearing Denied May 23, 2012.

William C. Frye, Frye Law Firm, P.A., North Little Rock, for Appellant.

Stephen L. Tisdale, Stephen L. Tisdale, P.A., Eudora, for Appellee.

DOUG MARTIN, Judge.

Appellee Jimmy Ray Baxter, an attorney, was involved in a motor vehicle accident on July 17, 2006, while on his way to a client's house to complete discovery. Appellants Ray Baxter, P.A. and Union Standard Insurance Company (collectively, "Union") controverted Baxter's claim in its entirety. An administrative law judge ("ALJ") found that Baxter failed to prove that he sustained a compensable injury arising out of and in the course of his employment, noting Baxter's extensive history of back problems. The Arkansas Workers' Compensation Commission reversed the ALJ's decision and ruled that Baxter proved that he sustained a compensable injury on July 17, 2006; that Baxter provided statutory notice of his injury to his employer on or about the date of his injury; and that Baxter proved that the treatment he received from July 17, 2006, until May 5, 2008, was reasonably necessary.[1] Union argues that the Commission's opinion is not supported by substantial evidence. We affirm.

Baxter worked as a claims adjuster for United States Fidelity & Guaranty Company before completing law school and beginning his own practice, Ray Baxter, P.A. In addition to injuries from numerous falls over the years, Baxter was involved in three motor vehicle accidents prior to the July 17, 2006 accident. Medical records indicate that Baxter was first treated for back injuries beginning in 1986. Prior to the accident on July 17, 2006, Baxter had undergone at least ten back surgeries. At issue in this case are Baxter's spinal injuries at T9–10 and L3–4.

On July 17, 2006, Baxter's car was struck from behind by another car. Baxter was treated at the emergency room of Saline Memorial Hospital for complaints of pain in his middle and lower back and his left hip. X-rays taken at the time revealed that "no acute abnormality [was] identified," and Baxter was released.

---

1. Baxter did not file a cross-appeal from the Commission's ruling that he was not entitled to treatment after May 5, 2008.

On the following day, July 18, 2006, Baxter saw Dr. Richard D. Peek, an orthopedic spinal specialist. According to Dr. Peek's records, Baxter had a "dramatic increase in his thoracic and left lumbar pain." Among other things, Dr. Peek diagnosed "L3–4 left herniated nucleus pulposus." Dr. Peek also noted that Baxter had severe spasms throughout the thoracic and lumbar spine. Dr. Peek sent Baxter to St. Vincent's Infirmary, and Dr. Peek reported on July 31, 2006, that Baxter had severe spasms and pain in the thoracolumbar and lumbar spine; diagnostic studies showed facet changes on the left side at L3–4; and a bone scan revealed that Baxter's ribs were injured where they attached to his spine. Dr. Peek referred Baxter to Dr. Thomas Hart, who specializes in pain management.

On August 9, 2006, Dr. Hart performed an injection procedure to alleviate Baxter's back pain. Also on that date, Baxter began undergoing physical therapy. Dr. Peek performed a trigger-point injection on August 18, 2006.

On October 19, 2006, Dr. Peek wrote:

[Baxter] has not really gotten over his motor vehicle accident. He has significant problems with the thoracic spine. The lumbosacral rhizotomies have been helpful. We will try a different brace and get Dr. Hart to evaluate him further. Topamax helped with the headaches and possibly can use the side effects of weight loss. We will see about getting rhizotomies at T9–10, T10–11 and T11–12. Rhizotomies of the L3–4 area have improved his pain.

Dr. Peek reported on December 14, 2006, that Baxter had developed postlaminectomy syndrome at T9–10 with facet inflammation. Dr. Peek wrote:

This is the area where he had laminectomy to place a spinal cord stimulator. He has developed increased activity involving the lower thoracic vertebrae, with positive bone scan in this region and also increased activity at the ribs from previous bone scan right after the motor vehicle accident. CT scan shows postlaminectomy changes.

A "First Report of Injury or Illness" indicated that the date on which Baxter notified the administrator was December 27, 2006. The report contained writing indicating that "[claimant] was on his way to work." Also, Baxter signed a "Form AR–C, Claim For Compensation" on December 28, 2006, on which was written "Back and spine/auto accident" that occurred on July 17, 2006.

On January 8, 2007, Dr. Peek reported:

Mr. Baxter was involved in a motor vehicle accident. He had severe trauma of the thoracolumbar spine.... He had trauma to the ribs in the T8 through T10 area and then developed increased activity in the junction above the prior fusion.... He has laminectomy and postlaminectomy changes around the facets at T10–11. Prior to the accident, he did not have any problems in this region. The injury to the thoracolumbar spine is requiring a fusion at this region....

Dr. Peek's report dated January 18, 2007, provides:

Ray Baxter came in to see me on July 18, 2006, having been injured in an automobile collision the day before.... When I saw him, he was suffering from complaints in his thoracic, lumbar and left hip areas and his left leg. Although I had seen Mr. Baxter many times in the past and was aware of the preexisting compression fractures at T10 and T11, he has never had muscle spasms in his thoracic spine this severe. In fact, the muscle spasms could not only be detected by physical examination but

were evident visibly. The spasms were much more severe than we had encountered in the past. We admitted him to the hospital primarily to get his pain under control and for a CT scan and a bone scan.

The CT scan showed new irritation at the facets at L3–4. I elected to refer him to Dr. Thomas Hart for a nerve block at that level and to see if radiofrequency rhizotomies would be of benefit in treating the pain. The nerve block was successful, and Mr. Baxter did have the radiofrequency rhizotomies performed bilaterally by Dr. Hart. These were repeated when the nerves regenerated. At the present time, he is having left hip and left leg pain, but his chief complaint is the muscle spasms in his thoracic spine, which have continued to worsen and increase his pain level. . . .

Since the accident of July 17, 2006, Mr. Baxter has been suffering from postlaminectomy syndrome at the T9–10 area. It is understandable that the spasms are as intense as they are and the degree of pain, since these nerves have nothing to protect them. We have to stabilize the area.

Mr. Baxter and I both wish to avoid the use of metallic implants because of adjacent segment problems. We will use bone product to fuse the facet joints at the T9–10 area. He has been through a lumbar spinal fusion previously and is well aware of the various risks and benefits of this type of surgery. The fusion will help decrease the spasm and irritation in the other facets and decrease the inflammation of the thoracolumbar junction with increased stability. Kyphoplasty previously performed added anterior column support but nothing for the facet posteriorly. He does respond to facet blocks in the thoracolumbar junction, which also supports this as the cause of his pain.

There is no question that Mr. Baxter suffered an injury in the collision of July 17, 2006, which dramatically aggravated a preexisting condition, and, in fact, precipitated a new injury as well. This was all verified by the CT scans and bone scans which have been performed.

On January 19, 2007, Dr. Peek performed a posterior spinal fusion at T9–10. With respect to this surgery, Baxter testified, "It reduced my thoracic pain significantly when he did that."

In a letter to Baxter dated April 17, 2007, Dr. Peek wrote:

As I stated during your hospitalization and with review of bone scans and CT scans, the motor vehicle accident of 07–17–06 caused injury to your thoracic laminectomy site and caused you to have thoracic postlaminectomy syndrome that you never suffered from before the accident. This was a new injury. It is within reasonable medical certainty this was caused by the motor vehicle accident.

On May 20, 2007, Dr. Peek performed a "decompressive laminectomy revision, L3–4" with a post-operative diagnosis of "spinal stenosis, L3–4." On June 13, 2007, Dr. Peek performed "an anterior lumbar interbody fusion" with the post-operative diagnosis of "postlaminectomy syndrome with stenosis L3–4." Baxter testified that he was "really feeling good" after these surgeries.

On May 5, 2008, Baxter was involved in another motor vehicle accident, after which he complained of "lumbar and thoracic pain" at the emergency room.

At a hearing before the ALJ, Baxter admitted having had a laminectomy, a fusion, and a bulging disc at L3–4 prior to July 17, 2006, and he did not deny that he had previously experienced intermittent

pain at L3–4, but Baxter insisted that the pain always subsided, until the accident on July 17, 2006. Baxter testified that, while he was treated with a spinal stimulator at T10 in 2002, he was under the impression that he had never had any problems at T9. According to Baxter, although he was treated with injections at T9–10 prior to July 17, 2006, Dr. Hart always "started a level above" the area that was to be treated, i.e., Baxter attributed his pain to previous compression fractures at T10 and T11.

In reversing the ALJ's decision denying Baxter's claim for benefits on the basis that Baxter's injuries did not arise out of or in the course of his employment, the Commission noted that the parties had stipulated that "the employee/employer/carrier relationship existed at all relevant times, including July 17, 2006," when Baxter was involved in a motor vehicle accident. The Commission pointed out that Baxter testified that, on July 17, 2006, he was driving to a client's home to perform legal services and that, following the accident, he received emergency medical treatment for complaints of pain in his middle and lower back and his left hip. Dr. Peek examined Baxter on the following day and reported severe muscle spasms throughout Baxter's thoracic and lumbar spine. The Commission noted that muscle spasms and Baxter's rib injuries revealed by a bone scan were objective medical findings. The Commission found that Baxter proved that he sustained a compensable injury to his middle back, thoracic spine, ribs, lower back, and lumbar spine on July 17, 2006.

With regard to Union's notice defense, the Commission found that Baxter reported his injury on or about the date of the accident. The Commission found that, on July 18, 2006, following the accident, Baxter called Linda Hardin, a claims adjuster for the law firm's workers' compensation carrier. While Hardin did not make a claim for workers' compensation benefits at that time because she "did not have information that it was a workers' comp claim . . .," Hardin conceded that, considering that Baxter was "the boss" at Ray Baxter, P.A., it stood to reason that the employer was notified of the accident since Baxter himself was involved.

In reviewing a decision from the Workers' Compensation Commission, we review the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings and affirm if the decision is supported by substantial evidence. *White v. Frolic Footwear*, 59 Ark.App. 12, 952 S.W.2d 190 (1997). Substantial evidence exists only if reasonable minds could have reached the same conclusion without resort to speculation or conjecture. *White Consol. Indus. v. Galloway*, 74 Ark.App. 13, 45 S.W.3d 396 (2001). The issue is not whether the appellate court might have reached a different result from that of the Commission, but whether reasonable minds could reach the result found by the Commission. *Texarkana Sch. Dist. v. Conner*, 373 Ark. 372, 284 S.W.3d 57 (2008). We will not reverse the Commission's decision unless we are convinced that fair-minded persons with the same facts before them could not have reached the conclusions of the Commission. *Cedar Chem. Co. v. Knight*, 99 Ark. App. 162, 258 S.W.3d 394 (2007). Questions concerning the credibility of witnesses and the weight to be given to their testimony are within the exclusive province of the Commission, and when there are contradictions in the evidence, it is within the Commission's province to reconcile conflicting evidence and to determine the true facts. *Neal v. Sparks Reg'l Med. Ctr.*, 104 Ark.App. 97, 289 S.W.3d 163 (2008). The Commission is not required to believe the testimony of the claimant or

any other witnesses but may accept and translate into findings of fact only those portions of the testimony that it deems worthy of belief. *Id.*

Arkansas Code Annotated section 11–9–102(4) (Repl.2002) provides:

(A) "Compensable injury" means:

(i) An accidental injury causing internal or external physical harm to the body ... arising out of and in the course of employment and which requires medical services or results in disability or death. An injury is "accidental" only if it is caused by a specific incident and is identifiable by time and place of occurrence[.]

The claimant has the burden of proving by a preponderance of the evidence that he sustained a compensable injury. Ark.Code Ann. § 11–9–102(4)(E)(i). "Preponderance of the evidence" means evidence of greater convincing force and implies an overbalancing in weight. *Potlatch Corp. v. Word,* 2009 Ark. App. 772, 359 S.W.3d 426.

A compensable injury must be established by medical evidence supported by objective findings. Ark.Code Ann. § 11–9–102(4)(D). "Objective findings" are those findings that cannot come under the voluntary control of the patient. Ark.Code Ann. § 11–9–102(16)(A)(i). Muscle spasms reported by a physician or occupational therapist have been held to fulfill the requirement of objective findings. *Wal–Mart Stores, Inc. v. Sands,* 80 Ark.App. 51, 91 S.W.3d 93 (2002).

Union argues that Baxter's testimony was "highly suspect" given that he claimed not to have ever experienced problems at T9–10, yet he was treated since 1998 for problems at both T9–10 and L3–4. Union also contends that Dr. Peek's opinion was questionable because some of his testimony was completely contrary to the medical records in this case, including his own records. In addition, Union argues that

Dr. Peek was not the only doctor treating Baxter and points out that Dr. Hart saw Baxter both shortly before and after the July 17, 2006 motor vehicle accident. Union contends that the Commission did not even address Dr. Hart's reports that reference Baxter's previous problems with and recent treatment of T9–10 and L3–4 prior to July 17, 2006. Finally, Union points out that Baxter had marked spasms in his thoracic spine the entire time prior to July 2006.

 Union challenges the credibility of Baxter, as well as that of Dr. Peek, an orthopedic surgeon, whose opinions rendered in deposition testimony conflicted with the medical records of Dr. Hart, who is a pain-management specialist. This court is foreclosed from determining the credibility and weight to be accorded to a witness's testimony. *Texarkana Sch. Dist., supra.* The Commission is the ultimate arbiter of weight and credibility; it has the authority to accept or reject medical opinions, and its resolution of conflicting medical evidence has the force and effect of a jury verdict. *Bridgestone/Firestone, Inc. v. Hensley,* 2010 Ark. App. 375, 2010 WL 1790772. On appeal, this court examines *only* the evidence that supports the Commission's findings. *White, supra.* If the Commission's conclusions are not unreasonable, we must affirm even if a preponderance of the evidence might indicate a contrary result, because it is not the role of the appellate court to weigh the evidence and judge the credibility of the witnesses. *See St. Joseph's Mercy Med. Ctr. v. Redmond,* 2012 Ark. App. 7, 388 S.W.3d 45. Rather, it is within the exclusive province of the Commission to make such determinations. *Neal, supra.* Given the standard of review, we must affirm the Commission's decision.

Next, Union argues that Baxter failed to give timely notice of his injury given that Baxter's spinal injuries were not reported as a workers' compensation claim until nearly six months after the July 17, 2006 motor vehicle accident. Arkansas Code Annotated section 11–9–701(a)(1) provides:

Unless an injury either renders the employee physically or mentally unable to do so, or is made known to the employer immediately after it occurs, the employee shall report the injury to the employer on a form prescribed or approved by the Workers' Compensation Commission and to a person or at a place specified by the employer, and the employer shall not be responsible for disability, medical, or other benefits prior to receipt of the employee's report of injury.

The present case involves an unusual fact pattern in that Baxter is both the employer and the employee. It is true that Baxter did not report his injury to Union Standard Insurance Company until December 27, 2006; however, the notice statute provides that an employee must report the injury to his employer, not his insurance carrier. Moreover, section 11–9–701(b)(1)(A) provides that failure to give the notice shall not bar any claim if the employer had knowledge of the injury. Clearly, Baxter knew of his own injury. Therefore, we affirm on this point as well.

Affirmed.

GRUBER and ABRAMSON, JJ., agree.