2012 Ark. App. 475

**ST. EDWARD MERCY MEDICAL CENTER and Sisters of Mercy Health System, Appellants**

v.

**Leanna CHRISMAN, Appellee.**

**No. CA 12–121.**

Court of Appeals of Arkansas.

Sept. 12, 2012.

Anderson, Murphy & Hopkins, LLP, Little Rock, by: Randy P. Murphy and Kyle E. Burton, for appellants.

Walker, Shock & Harp, PLLC, by: Eddie H. Walker, Jr., Fort Smith, for appellee.

JOHN B. ROBBINS, Judge.

Appellee Leanna Chrisman sustained neck and back injuries while working as a certified nursing assistant for appellant St. Edward Mercy Medical Center on December 29, 2009. St. Edward accepted the injury as compensable and instructed her to see Dr. R. Cole Goodman for treatment. Dr. Goodman released Ms. Chrisman from his care on February 4, 2010, and St. Edward controverted any additional medical treatment beyond that time. Ms. Chrisman subsequently sought treatment from Dr. Arthur Johnson, who diagnosed a large herniation at C5–6 and performed an anterior cervical diskectomy with fusion on March 26, 2010. After a hearing on Ms. Chrisman's claim for additional benefits, the administrative law judge found that she was entitled to compensation for the medical treatment provided by Dr. Johnson as well as temporary total disability benefits from March 4, 2010, through November 18, 2010. The Workers' Compensation Commission affirmed and adopted the ALJ's decision.

St. Edward now appeals from the Commission's decision, raising three arguments. First, it contends that the treatment provided by Dr. Johnson was unauthorized on the basis that the Commission erred in failing to apply the

change-of-physician rules set forth in Ark.Code Ann. § 11–9–514 (Repl.2012). Next, St. Edward argues that substantial evidence does not support the Commission's finding that Ms. Chrisman was entitled to additional medical treatment by Dr. Johnson because the treatment was not reasonably necessary in connection with the compensable injury. Finally, St. Edward challenges the Commission's award of temporary total disability benefits. We affirm the Commission's decision.

We review decisions of the Workers' Compensation Commission to determine whether there is substantial evidence to support them. *Walgreen Co. v. Goode,* 2012 Ark. App. 196, 395 S.W.3d 398. Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* We review the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings. *Id.* This court is foreclosed from determining the credibility and weight to be accorded a witness's testimony. *Baxter v. Union Standard Ins. Co.,* 2012 Ark. App. 251, 413 S.W.3d 561. The Commission is the ultimate arbiter of weight and credibility; it has the authority to accept or reject medical opinions, and its resolution of conflicting medical evidence has the force and effect of a jury verdict. *Id.* Our standard of review requires that we affirm if reasonable minds could reach the Commission's decision, and we do not determine whether the evidence could support a contrary finding. *St. Joseph's Mercy Med. Ctr. v. Redmond,* 2012 Ark. App. 7, 388 S.W.3d 45.

Ms. Chrisman testified that the compensable injury on December 29, 2009, occurred when she was helping a patient use the restroom. The patient passed out when she got up, and Ms. Chrisman twisted her back while holding the patient. According to Ms. Chrisman, she immediately felt pain in her neck and hip as well as numbness shooting into her fingers, and she reported the incident to her employer.

St. Edward sent Ms. Chrisman to Dr. Goodman, and she first visited him on January 4, 2010. Ms. Chrisman complained of pain in her neck and upper back, and Dr. Goodman's assessment was back and neck strain. Dr. Goodman prescribed medication and physical therapy and returned Ms. Chrisman to light duty. St. Edward provided Ms. Chrisman light-duty work answering telephones.

Ms. Chrisman saw Dr. Goodman again on January 18, 2010, and on that day Dr. Goodman reported that she was no longer having low-back pain and that her low-back strain was resolving. However, Dr. Goodman reported that Ms. Chrisman's upper extremity was worse and that there was no improvement with her neck strain.

The last time Ms. Chrisman visited Dr. Goodman was on February 4, 2010. On that date Dr. Goodman reported:

> Since she signed a release of information following this injury, I was given a copy of an MRI performed in August 2006. That MRI shows problems at the C4–5 level and C5–6 level with posterolateral disc herniation of moderate size, associated spurring with this, and canal stenosis. That is three and a half years ago. I have explained to Ms. Chrisman that with those findings on MRI, I think that her problem is more related to her neck and the problems she has in her neck tha[n] it is related to her injury, and that her work injury is not related at all to her neck problem. I have discussed this with her and I feel she needs to see a neurosurgeon or Dr. Swicegood or Dr. Miller for follow up of her cervical spine.

In Ms. Chrisman's testimony, she stated that she was not aware that the 2006 MRI showed a neck herniation, and that she

was not under any regular treatment for her neck prior to the December 29, 2009, compensable accident.

Ms. Chrisman testified that her symptoms persisted and that she continued to work light duty until March 3, 2010, when she became weaker and her hands hurt too much to answer the phones. She went to River Valley Urgent Care on March 3, 2010, and they ordered an MRI of the cervical spine for a more current picture of the previous C5–6 disc protrusion. That MRI was performed on March 10, 2010, and Ms. Chrisman was referred by River Valley Urgent Care to Dr. Arthur Johnson. Ms. Chrisman testified that she visited River Valley Urgent Care and then Dr. Johnson on her own. She explained that she did not return to Dr. Goodman for her continued problems "because he is the workmen's comp doctor and he turned me loose."

Dr. Johnson saw Ms. Chrisman on March 25, 2010. He reported that the March 10, 2010, MRI showed a large disc herniation at C5–6 with right upper-extremity radiculopathy, causing nerve-root and thecal-sac compression. Dr. Johnson performed surgery at the C5–6 level on March 26, 2010. In a follow-up report dated May 20, 2010, Dr. Johnson reported improvement and said that Ms. Chrisman was doing reasonably well, and he released her to light-duty work lifting no greater than twenty pounds. On November 18, 2010, Ms. Chrisman was released from Dr. Johnson's care, and at that time Dr. Johnson assigned the same light-duty work restrictions.

Ms. Chrisman testified that after her surgery she attempted to return to work for St. Edward but that they had no work within her restrictions. She stated that she can no longer work as a certified nursing assistant because it requires lifting of more than fifty pounds. Ms. Chrisman indicated that she has not completely re-covered and that the surgery did not cure her neck problems. She stated that she still has pain and numbness in her neck, arms, and shoulders. Even though Dr. Johnson returned her to work with light-lifting restrictions, Ms. Chrisman testified that she had not worked anywhere since March 3, 2010, and did not feel that she was physically capable.

In this appeal challenging the Commission's award of additional workers' compensation benefits, St. Edward first argues that the treatment rendered by Dr. Johnson was unauthorized and that the Commission erred in failing to apply the change-of-physician rules contained in Ark. Code Ann. § 11–9–514 (Repl.2012). Pursuant to Ark.Code Ann. § 11–9–514(a)(3)(A)(i), the employer has the right to select the initial treating physician, and in this case St. Edward selected Dr. Goodman. However, an employee may request a one-time change of physician. Ark.Code Ann. § 11–9–514(a)(2)(A), (a)(3)(A)(ii), (iii). When a claimant seeks a change of physician, he must petition the Commission for approval. *Stephenson v. Tyson Foods, Inc.*, 70 Ark. App. 265, 19 S.W.3d 36 (2000). Treatment or services furnished or prescribed by any physician other than the ones selected according to the change-of-physician rules, except emergency treatment, shall be at the claimant's expense. Ark.Code Ann. § 11–9–514(b). In the present case, St. Edward asserts that, because Ms. Chrisman made no effort to obtain approval for any change of physician before seeing Dr. Johnson, the treatment by Dr. Johnson was unauthorized and should have been denied by the Commission.

St. Edward acknowledges the following requirement mandated by Ark. Code Ann. section 11–9–514(c)(1):

> After being notified of an injury, the employer or insurance carrier shall de-

liver to the employee, in person or by certified or registered mail, return receipt requested, a copy of a notice, approved or prescribed by the commission, which explains the employee's rights and responsibilities concerning change of physician.

However, St. Edward asserts that it complied with this provision because form AR–N, signed by Ms. Chrisman on the day following the compensable accident, was admitted into evidence.[1] Arkansas Code Annotated section 11–9–514(c)(3) provides that any unauthorized medical expense incurred after the employee has received a copy of the notice shall not be the responsibility of the employer. St. Edward contends that because it provided sufficient notice to Ms. Chrisman and yet she failed to follow the statutory change-of-physician rules, the Commission erred in holding St. Edward responsible for the additional medical treatment, including the surgery performed by Dr. Johnson.

■ In order to preserve an issue for appellate review in a workers' compensation case, it is a party's responsibility to present the issue to the Commission and obtain a ruling. *See Goodwin v. Phillips Petroleum Co.,* 72 Ark. App. 302, 37 S.W.3d 644 (2001). Because |₇St. Edward failed to apprise the Commission of any argument pertaining to the change-of-physician rules or obtain any ruling on the argument, we hold that this issue has been waived and that the merits need not be addressed on appeal.

In its reply brief, St. Edward argues that this point was preserved below, noting that form AR–N was admitted into evidence without objection and that Ms. Chrisman's counsel elicited testimony from her about whether she had sought additional treatment on her own. St. Edward submits that the only probative value of

the AR–N form or Ms. Chrisman's testimony in this regard went to the issue of whether the additional treatment was authorized. Moreover, St. Edward posits that its notice of appeal from the ALJ to the Commission identifies two issues with respect to the additional treatment in that it states:

> The Administrative Law Judge erred in finding that Claimant is entitled to the additional medical treatment performed by Dr. Johnson including surgical intervention and after care *and* that that treatment was reasonable and necessary treatment for her compensable cervical spine injury.

(Emphasis added.)

Upon review of this record, we cannot agree that St. Edward sufficiently raised an issue pertaining to the change-of-physician rules. The prehearing order provided that, by agreement of the parties, the issues to be litigated were limited to additional medical treatment for the claimant's cervical spine, temporary total disability benefits from March 4, 2010, through November 18, 2010, and attorney's fees. The ALJ's opinion summarizes St. Edward's contentions as follows:

> Respondents contend that all benefits to which claimant is owed have been paid; Respondents contend that claimant's current problems are not related to the |₈compensable injury at work and that claimant had preexisting neck and back problems at the time of her December 29, 2009, injury.

The ALJ's decision to award additional medical benefits was based on its finding that the treatment by Dr. Johnson was reasonable and necessary for Ms. Chrisman's compensable injury. Neither the ALJ nor the Commission made any ruling

---

1. The AR–N form, among other things, is a written notice outlining the employee's rights and responsibilities concerning a change-of-physician request.

pertaining to the change-of-physician rules contained in Ark.Code Ann. § 11–9–514, and after the ALJ issued its opinion St. Edward failed to specifically complain about the omission of that issue from the ALJ's decision. Although St. Edward admitted a copy of the signed AR–N form, it made no argument relating to the change-of-physician rules. Moreover, we have said that the burden of proving *delivery* of the change-of-physician form is on the employer, *St. Edward Mercy Med. Ctr. v. Phipps,* 2011 Ark. App. 497, 2011 WL 3925370 (emphasis added), and we have also held that merely signing the AR–N form is not necessarily sufficient proof that it was "furnished and delivered" to the claimant as required by statute. *See Nettleton Sch. Dist. v. Adams,* 2010 Ark. App. 3, 2010 WL 26393 (Commission credited claimant's testimony that although she signed the form she was not provided a copy and thus was unable to examine the change-of-physician procedure printed on the back of the form, and we affirmed award of additional medical care). Pursuant to Ark.Code Ann. § 11–9–514(c)(2), if, after notice of injury, the employee is not furnished a copy of the notice, the change-of-physician rules do not apply. This issue was not presented to the ALJ or the Commission for decision, and there was no testimony as to whether the AR–N form was actually delivered to Ms. Chrisman. Because the issue was not specifically raised or ruled upon, we cannot reach the merits here.

St. Edward's next argument on appeal is that substantial evidence does not support the Commission's finding that Ms. Chrisman was entitled to the additional medical treatment by Dr. Johnson because that treatment was not reasonably necessary in connection with the compensable injury. Pursuant to Ark.Code Ann. § 11–9–508(a) (Repl.2012), employers are required to provide medical services that are reasonably necessary in connection with the injury received by an employee. Claimants have the burden of proving that treatment is reasonably necessary by a preponderance of the evidence, and what constitutes reasonably necessary treatment is a question of fact for the Commission. *Cole v. Commerce & Indus. Ins. Co.,* 2009 Ark. App. 617, 2009 WL 3153322. Where treatment is for other conditions not causally related to the compensable injury, such treatment is not the responsibility of the employer. *See id.*

St. Edward argues that the medical treatment and surgery provided by Dr. Johnson were to treat Ms. Chrisman's preexisting neck problems, which were not caused by the incident at work on December 29, 2009. St. Edward notes that an August 2006 MRI report identified a problem at the C5–6 level, and further asserts that when Dr. Goodman released Ms. Chrisman on February 4, 2010, he thought the neck problems she was experiencing were related to a prior condition rather than her work injury. St. Edward also relies on the opinion of Dr. Earl Peeples, who reviewed the medical records at appellant's request. On June 8, 2011, Dr. Peeples reported that "[s]ince there was a large defect present four years earlier and since there were accompanying osteophytes indicative of degeneration, the abnormality of Ms. Chrisman is not, in my opinion, related to the work incident of January 2010 [sic], but to some earlier factors with natural degenerative progression since its identification in 2006 by MRI and 2006 upper extremity symptoms." St. Edward asserts that because there was not substantial evidence that the herniation at C5–6 was the result of the incident at work, the Commission erred in finding Dr. Johnson's treatment to be reasonably necessary in connection with the compensable injury.

We hold that substantial evidence supports the Commission's determination that the treatment provided by Dr. Johnson was causally related to and reasonably necessary for the treatment of Ms. Chrisman's compensable injury. The August 2006 MRI showed a moderate herniation at C5–6, but the March 2010 MRI indicated a large herniation at that level. In an April 26, 2011, report, Dr. Johnson noted that he had reviewed the August 2006 MRI, that the disc herniation he observed during surgery was a large herniation, and he stated, "It is more probable than not that the job-related event during which Ms. Chrisman was trying to hold a patient who passed out was likely the major cause for her need for surgery that I performed on March 26, 2010." Although Dr. Goodman initially related the herniation to a preexisting condition, he subsequently changed his opinion. On June 13, 2011, Dr. Goodman authored an exhaustive report on Ms. Chrisman's condition and concluded:

> My Comment to this would be that the MRI of 2006 showed a moderate disc bulge. The MRI done in 2010 showed a large herniation and she remained symptomatic at the C5–C6 level until after Dr. Johnson's surgery, so she did have preexisting disease. I believe this was aggravated by her injury and this was documented by the change in the MRI findings and the fact that her symptomatology went away following decompressive laminectomy and cervical fusion.

While St. Edward contends that Dr. Goodman's opinion addressing compensability was not stated within a reasonable degree of medical certainty as required by Ark. Code Ann. § 11–9–102(16)(B) (Repl.2012), we do not agree. Both Drs. Johnson and Goodman related the treatment and surgery by Dr. Johnson to Ms. Chrisman's compensable cervical-spine injury, and the Commission specifically credited both of

their opinions. Leaving the weighing of medical evidence to the Commission, as we must, we affirm its finding that the additional medical treatment was reasonably necessary in connection with the compensable injury.

St. Edward's remaining argument is that substantial evidence does not support the Commission's award of temporary total disability benefits from March 4, 2010, through November 18, 2010. St. Edward argues that because the treatment by Dr. Johnson was unauthorized due to non-compliance with the change-of-physician rules, and because the surgery was not causally related to the compensable injury, no corresponding disability benefits should have been awarded. Alternatively, St. Edward contends that any temporary total disability benefits should have lasted only from March 4, 2010, through May 20, 2010, when Dr. Johnson released Ms. Chrisman to work with restrictions. To receive temporary total disability benefits, a claimant must prove that she was within her healing period and that she was totally incapacitated from earning wages. *Hickman v. Kellogg, Brown & Root,* 372 Ark. 501, 277 S.W.3d 591 (2008). St. Edward submits that Ms. Chrisman was not totally incapable of earning wages after May 20, 2010, and that her testimony to the contrary was not substantial.

We hold that substantial evidence supports the Commission's award of temporary total disability benefits from March 4, 2010, through November 18, 2010. Because we have affirmed the Commission's award of additional medical treatment, we similarly affirm the temporary total disability benefits associated with that treatment. We recognize that on May 20, 2010, Dr. Johnson released Ms. Chrisman to work with the restriction of lifting no more than twenty pounds. However, the Commission specifically found credible Ms.

Chrisman's testimony that she was physically unable to work from March 4, 2010, to November 18, 2010, and we are bound by its credibility determination.

Affirmed.

VAUGHT, C.J., and ABRAMSON, J., agree.