Cite as 2023 Ark. App. 147

# ARKANSAS COURT OF APPEALS
DIVISION II
**No.** CV-21-565

| | |
|---|---|
| TEMPWORKS MANAGEMENT SERVICES, INC., AND AMTRUST NORTH AMERICA<br><br>APPELLANTS<br><br>V.<br><br>GARY JAYNES<br><br>APPELLEE | **Opinion Delivered** March 15, 2023<br><br>APPEAL FROM THE ARKANSAS WORKERS' COMPENSATION COMMISSION<br><br>[NO. G703512]<br><br>AFFIRMED |

## BRANDON J. HARRISON, Chief Judge

We've seen this compensable injury before. Gary Jaynes is a master electrician. In February 2020, we affirmed the Full Commission's findings after a September 2018 hearing that Jaynes was entitled to an 11 percent impairment rating to his body as a whole, and a 10 percent wage-loss disability, for a compensable injury he suffered 8 March 2017 while working in a muddy ditch on Weyerhaeuser property. *Tempworks Mgmt. Servs., Inc. v. Jaynes*, 2020 Ark. App. 70, 593 S.W.3d 519. Jaynes's feet sank into the mud. As he tried to pull his left foot out of the mud, he found he could not raise his legs. He felt something "pop" in his left hip. He had to be helped out of the ditch, and has not been the same since. He was then fifty-five years old.

In November 2020, the Commission heard Jaynes's request for temporary total disability benefits for five weeks in March and April 2019 he spent recovering from

lumbar decompression surgery. His employer, Tempworks Management Services, Inc., appeals the Commission's decision that medical treatment provided by Dr. Scott Schlesinger, a neurosurgeon, was reasonably necessary and causally related to Jaynes's compensable injury, entitling Jaynes to temporary total-disability benefits for that healing period. We affirm.

Tempworks raises two issues. First, it challenges the Commission's finding that Dr. Schlesinger's treatment was reasonably necessary and related to Jaynes's injury. Dr. Schlesinger opined that the problems he treated beginning in August 2018 were more likely than not related to Jaynes's March 2017 injury. Tempworks offered additional medical records that were asserted to show otherwise. The administrative law judge (ALJ) took Tempworks' view of the conflicting evidence. The Full Commission, though, favored Dr. Schlesinger's.

We discussed the standard of review for a similar finding in *USA Truck, Inc. v. Webster*:

> This court views the evidence and all reasonable inferences in the light most favorable to the Commission's findings and affirms if supported by substantial evidence. Substantial evidence is that which a reasonable mind might find as adequate to support a conclusion. The question is not whether the evidence would have supported findings contrary to the ones made by the Commission; rather, it is whether there is substantial evidence to support the Commission's decision even though we might have reached a different conclusion if we sat as the trier of fact. Credibility questions and the weight to be given to witness testimony are within the Commission's exclusive province.

> It is also within the Commission's province to weigh all the medical evidence, to determine what is most credible, and to determine its medical soundness and probative force. We have long held that the Commission's decision to accept or reject medical opinions and how it resolves conflicting medical evidence has the force and effect of a jury verdict. In weighing the

2

evidence, the Commission may not arbitrarily disregard medical evidence or the testimony of any witness. But when the Commission chooses to accept the testimony of one physician over that of another, the appellate court is powerless to reverse the decision.

2020 Ark. App. 236, at 4–5, 599 S.W.3d 368, 371–372 (citations omitted).

Since about a week after Jaynes's injury, he has sought treatment for persistent left thigh pain and numbness. The results of an electrodiagnostic evaluation Dr. Miles Johnson performed in September 2017 supported a finding that the pain had a neurogenic origin. Dr. Johnson's report was in the record of the previous hearing that concluded in September 2018. So were opinions from other doctors who concluded Jaynes had not suffered a permanent impairment. The Commission noted the conflicting medical evidence and gave Dr. Johnson's conclusions more weight. We affirmed. *Jaynes*, 2020 Ark. App. 70, at 5, 593 S.W.3d at 523. We held that objective medical findings—and Dr. Johnson's findings in particular—supported the Commission's finding that Jaynes had suffered a permanent impairment and wage loss. *Id.*

The precise source of Jaynes's pain was not identified. In Dr. Johnson's opinion, the electrodiagnostic results were "consistent with an incomplete left femoral neuropathy versus possible lumbar radiculopathy, approximate L2-L4 levels." A lumbar MRI from June 2017 had shown some degenerative changes, but no disc herniation. An electrodiagnostic study by a different doctor in June 2018 found "[a] mild excess of polyphasic units . . . in a single L2/3/4-innervated muscle" but "no convincing electrophysiologic evidence of lumbosacral radiculopathy [or] focal neuropathy[.]"

Jaynes's frustration with the failure to identify or treat the source of his pain is documented throughout the record. Dr. Steven Cathey, a neurosurgeon, met with Jaynes

3

in July 2017 after reviewing the MRI. He noted that Jaynes and his family seemed "understandably frustrated as there does not appear to be a remedy to the patient's current symptoms." *Id.* A year later, Dr. C. Lowry Barnes noted that Jaynes was "extremely upset that no one can find his problem."

Jaynes continued to look for someone who could. Without consulting his attorney, he presented to Dr. Schlesinger's spine clinic in August 2018. He underwent a new lumbar MRI August 6. The results were consistent with Dr. Johnson's previous electrodiagnostic report: Dr. Schlesinger interpreted the images as abnormal with a finding of "Probable left L2-3 neural foraminal disc protrusion with probable left L2 nerve root compression[.]" A radiologist concurred. Jaynes received some relief from selective nerve-root block spinal injections at that level. An MRI conducted a few weeks before the March 2019 lumbar decompression surgery showed no significant change. The surgery was intended to correct that issue. An electrodiagnostic study conducted in January 2020, after the surgery, suggested "moderate, subacute on chronic, left L2 and L3 radiculopathies with evidence of ongoing denervation"—again consistent with Dr. Johnson's 2017 report. The Commission found Dr. Schlesinger's causation opinion credible and "corroborated by the probative evidence of record." Fair-minded persons with the same facts before them could have concluded, as the Commission did, that the surgery was reasonably necessary and related to Jaynes's injury.

Second, Tempworks argues Dr. Schlesinger's treatment was not "authorized medical treatment" under Ark. Code Ann. § 11-9-514 (Supp. 2021) because Jaynes had received an order changing his authorized treating physician to one Dr. Knox in 2017,

4

and Dr. Knox did not refer him to Dr. Schlesinger. Briefly, Ark. Code Ann. § 11-9-514(c)(1) requires an employer or insurance carrier to deliver a Commission-approved notice to the employee "which explains the employee's rights and responsibilities concerning change of physician." Unauthorized medical expenses incurred after the employee has received the notice are not the employer's responsibility. *Id*. § 11-9-514(c)(3). But if the employee is not furnished a copy of the notice, the change-of-physician rules don't apply. *Id*. § 11-9-514(c)(2).

We discussed those statutes—and our duty to strictly construe them—in *Delargy v. Golden Years Manor*, 2014 Ark. App. 499, 442 S.W.3d 889. In *Delargy*, the claimant testified she had "read and signed" the notice specified in section 514(c), Commission Form AR–N. *Id*. at 2, 442 S.W.3d at 890. The Commission found that her medical treatment from one doctor was unauthorized. Our opinion implies she had received a change-of-physician order; we noted that "the actual signed Form AR–N is neither in the abstract nor in the record (neither is the change-of-physician request)." *See id*. In any event, we held that substantial evidence did not support the Commission's decision that the treatment was unauthorized, because the requirements for "receiving" Form AR–N "are statutory in nature" and we must strictly construe them. *Id*. at 2–3, 442 S.W.3d at 890–91. We reversed because there was no evidence the employer had complied with those provisions.

Tempworks asserted in a pre-hearing brief that "Dr. Schlesinger's treatment was not authorized medical nor was the medical ordered by Dr. Knox, who is the Claimant's

treating physician." However, Tempworks abandoned that argument at the November 2020 hearing, conceding Jaynes had not been provided with a Form AR-N:

| THE COURT: | Has there been an argument made that the medical treatment is not authorized? |
| --- | --- |
| COUNSEL: | No. It's not reasonable and necessary. There's no Form N. They did ask for a change of physician, but there is no Form N that was provided. |
| THE COURT: | No Form N? Okay. |
| COUNSEL: | So it would be straight reasonable and necessary. |

The ALJ, it seems, rejected this limitation. Despite the conceded absence of any Form AR-N, it found Jaynes "obviously was aware of his [change-of-physician] rights and responsibilities" since he had petitioned for a change of physician, and found that the change-of-physician order had provided Jaynes with adequate notice "of his statutory [change-of-physician] rights and responsibilities—as well as his right to appeal the order if he felt 'aggrieved' by it."

The Full Commission did not affirm those findings. It noted Tempworks' concession that no Form AR-N was provided. Citing *Delargy*, *supra*, it found Jaynes was free to seek reasonably necessary medical treatment from Dr. Schlesinger because "[i]f there is not a signed and delivered Form AR-N in the record before the Commission, then the claimant is not bound by the change of physician rules."

In a previous appeal involving the change-of-physician rules and Form AR-N, we noted that "to preserve an issue for appellate review in a workers' compensation case, it is a party's responsibility to present the issue to the Commission and obtain a ruling." *St.*

6

*Edward Mercy Med. Ctr. v. Chrisman*, 2012 Ark. App. 475, at 6, 422 S.W.3d 171, 175. The employer had admitted a copy of the signed AR-N form; but it made no argument about the change-of-physician rules. *Id.* at 8, 422 S.W.3d at 176. Where neither the ALJ nor the Full Commission made any ruling about those points either, the points could not be raised on appeal. *Id.*

We have not found a decision where, like our facts here, the appellant attempted to challenge the Commission's decision to reverse a ruling the ALJ made on his own initiative on an issue the appellant had expressly waived during the hearing before the ALJ. Assuming Tempworks can raise the issue now, it was right to concede the issue there. We have permitted little deviation from the strictly construed requirements of section 11-9-514(c). For example, in *Fuller v. Pope County Judge*, 2018 Ark. App. 1, 538 S.W.3d 851, the record included a Form AR-N signed by the claimant. *Id.* at 3, 538 S.W.3d at 854. The claimant acknowledged the signature was his, but he did not remember completing the form or who gave it to him. *Id.* The Commission credited his supervisor's testimony that it was his standard practice to give injured employees a form AR-N, and he was certain the claimant received the form. *Id.* We affirmed under a substantial-evidence standard. Elsewhere, we found noncompliance even when, for example, the claimant had signed a form AR-N (at a disputed time), and the employer's claims coordinator testified she had verbally explained the change-of-physician process to the claimant after the injury. *Stephenson v. Tyson Foods, Inc.*, 70 Ark. App. 265, 272, 19 S.W.3d 36, 40 (2000) ("We think [the language in section 11-9-514(c)(1) referring to a 'copy of a notice'] clearly connotes that the notice will be in writing, and that verbal notification does not comply

with the requirements of the statute."). Tempworks admitted there was *no compliance* with the notice requirements in section 514(c). The Commission correctly concluded that, under our precedents, the change-of-physician rules therefore do not apply. Because the change-of-physician rules do not apply, according to the Commission, Jaynes "was free to seek reasonably necessary medical treatment from any physician, including Dr. Schlesinger."

Affirmed.

VIRDEN and THYER, JJ., agree.

*Frye Law Firm, P.A.*, by: *William C. Frye*, for appellants.

*Gary Davis Law Firm*, by: *Gary Davis*, for appellee.